**PILGER et al. v. SUTHERLAND, Alien Property Custodian, et al.**

No. 5273.

Court of Appeals of the District of Columbia.
Argued Jan. 6, 1932.
Decided March 7, 1932.

Frank S. Bright, H. Stanley Hinrichs, and Mabel Walker Willebrandt, all of Washington, D. C., and A. W. Lafferty, of New York City, for appellants.

H. B. Cox, of Washington, D. C., for appellees Howard Sutherland and Walter O. Woods.

Thomas H. Creighton, Jr., of Washington, D. C. (Otto C. Sommerich and Henry A. Stickney, both of New York City, of counsel), for appellee Adolph Wagner.

Edwin N. Cherrington, of Washington, D. C. (Otto C. Sommerich and Henry A. Stickney, both of New York City, of counsel), for appellee Leo Koehler.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

After the outbreak of the war between Great Britain and Germany, the British public trustee, on behalf of the British government, seized various branches of German banks located in London. In the possession of these branch banks he found a large number of certificates representing shares of stock in American corporations, and these he took possession of, in virtue of his office, and applied to the English courts for authority vesting title in him to the shares of stock represented by the certificates.

When the United States entered the war, American corporations were required to report to the Alien Property Custodian the shares of stock of their respective corporations believed to belong to enemy aliens. The Custodian, in due time thereafter, served notice upon these corporations, under the provisions of the Trading with the Enemy Act, for title to such enemy-owned shares of stock. This resulted in double seizure of part of the stock formerly owned by German nationals in American corporations, but, before the war closed, an agreement was reached between the British and Amer-

ican custodians, as the result of which the former surrendered to the latter the claim of Great Britain to any shares of American stocks which the American Custodian had seized, and transmitted to the American custodian the certificates for such shares of stock.

After the war, and in 1928, the British custodian, believing that he had acted improvidently in surrendering the certificates, brought a suit in the Supreme Court of the District of Columbia to recover them back, and attached to his bill of complaint a schedule of the certificates so surrendered designated Exhibit A. Appellants intervened in the suit, and asserted ownership to a small part of the shares of stock which the British custodian was seeking to recover. The main suit was dismissed by agreement, but "without prejudice, however, to the continuance of the suit as between the several defendants and/or interveners, and without prejudice to the rights of any of the defendants and/or interveners to establish any claim that any of the defendants and/or interveners has against any other of the defendants and/or interveners with respect to the property involved in this suit." At a later date, a motion to dismiss appellants' intervening complaint was duly filed on the ground (a) that there was a nonjoinder of indispensable parties; (b) that the intervening bill of complaint showed no ownership in the subject-matter of the suit; and (c) that appellants had a complete and adequate remedy at law. The motion was granted and the bill dismissed, and it is from the decree of dismissal that this appeal is taken.

It is, of course, fundamental that a bill should not be dismissed upon motion, unless it is perfectly clear that the allegations of the bill, taken as true, are insufficient to make a case. Measured by this rule, we think the lower court erred in dismissing the bill.

Authority to maintain a suit against the Alien Property Custodian and the Treasurer of the United States in their official capacities is contained in section 9 of the Act of Congress of October 6, 1917, known as the Trading with the Enemy Act (40 Stat. 411, as amended by the Act of March 4, 1923, c. 285, 42 Stat. 1511, and by Settlement of War Claims Act, approved March 10, 1928, c. 167, 45 Stat. 254 [50 USCA Appendix § 9]). Paragraph (a) of this section provides that "any person not an enemy or ally of enemy claiming any interest, right,

or title in any money or other property" which had come into the possession of the Alien Property Custodian might file a claim under oath with the Custodian, as the result of which the President may order the claim paid, or, if he should not do so within a definite period, the claimant may institute suit in equity in the proper court to establish his "interest, right, title, or debt so claimed." The right of an alien enemy to make such a claim was conferred by amendment, now known as subsection (b) of section 9, and the right to maintain a suit was given by amendment, now known as subsection (c), and this reads: "Any person whose money or other property the President is authorized to return under the provisions of subsection (b) hereof may file notice of claim for the return of such money or other property, as provided in subsection (a) hereof, and thereafter may make application to the President for allowance of such claim and/or may institute suit in equity to recover such money or other property, as provided in said subsection, and with like effect."

The question which we have to determine is whether appellants have brought themselves by their bill within the terms of the act.

Condensed, the bill states that prior to the World War the Dresdner Bank (and another bank) conducted a banking business, with a branch in London, and, as a part of such business, purchased, as agent and trustee for its customers, certificates of stock, and held them, as such agent and trustee, at its London branch; and that prior to the World War the bank purchased certain itemized securities for appellants, for which appellants paid the full purchase price; that the certificates so purchased were never transferred into the names of the purchasers, but were held for the account of the purchasers in a pool, the bank at all times having on hand sufficient certificates of all stocks purchased for the account of customers to meet at any time the demand of a customer for a certificate; that the bank, after the seizure of the certificates by the English government and their surrender to the American government, attempted to make allotments of the certificates which were no longer in its hands or custody by designating to certain favored customers by certificate number certificates representing shares which had been returned to the United States and to appellants certificates representing shares which had

been already sold or disposed of by the British trustee, and that this conduct of the bank, in giving to a part of its customers, all of whom were on the same footing at the outbreak of the war and the seizure of the property, a favored position, was in fraud of appellants' rights, and that such allotment of certificate numbers had no legal effect in divesting appellants of ownership in the shares of stock they were entitled to, but that, such shares now being held by the Custodian, they are entitled under the provisions of the act to have the court determine their interest therein and set the same aside for them.

Appellees insist that the act requires that the claimant must be the owner of the property claimed at the time of the seizure, and that the property claimed must be so described that the Custodian may identify it in such a way as to determine whether the ownership existed at the time of seizure, and that he now has possession of it, and they say that appellants do not claim any specific property or any particular certificates of stock, but only a pro rata distribution of the shares of stock in the hands of the Custodian, and that at best this is nothing more than a claim to an equitable interest in the shares in question and therefore not within the terms of the act; in other words, that it is incumbent upon the appellants to point out their property and distinguish it from the property of other claimants and prove ownership at the time of seizure.

It is undoubtedly true that appellants do not claim, and cannot claim, that any particular certificate of stock purchased for the account of any of them was ever earmarked and set aside in such way as to identify it as the particular property of any one of them, and, if this is fatal to their right of action, the decision below is correct, but we think the act should not be so construed.

Section 9 (a) as amended (subsection (c), as we have already seen, permits a subject of Germany claiming "any interest, right, or title" in any property to make demand and to bring suit, and we think it clearly was the purpose of Congress in passing the act to provide restitution of enemy-owned private property (to the extent of 80 per cent. thereof) to the rightful owner of such property, and to that extent to restore the status quo ante bellum as nearly as is possible, and that machinery is provided by the act to enable the fact of ownership, where it is disputed, to be determined in the courts of the United States.

■■ If the allegations of appellants' bill be taken as true, as on the motion they must be, it cannot, we think, be said that they do not show an interest or right in the property claimed, or that they are any the less "the owner" thereof because they are unable to identify any particular shares of stock from among the whole number of shares seized. The bill alleges that the bank, as broker, purchased for them a certain number of shares in particular corporations, and that under a custom of business the bank took the certificates either in its own name or that of another, and held them for the customer's account in such circumstances as to create the relationship of principal and agent. In such case, the agent is in effect the mere pledgee of the securities, and the property right—the ownership—is in the principal. The broker or agent is charged with the duty of keeping on hand enough shares of stock to satisfy his contract, and it has been held that delivery under such circumstances to the customer would not, even in the event of the broker's bankruptcy, be a preference. See Gorman v. Littlefield, 229 U. S. 19, 33 S. Ct. 690, 691, 57 L. Ed. 1047. The bill here alleges that the Alien Property Custodian has enough of all the stocks of different corporations claimed to answer the demands of appellants, and that the certificates for the same originally belonged to the bank or banks which, appellants claim, had purchased same for their account. These allegations taken together, if true, make a case for trial on the merits. See Bourne v. Miller (C. C. A.) 4 F.(2d) 1006; Richardson v. Shaw, 209 U. S. 365, 28 S. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981; Gorman v. Littlefield, supra. In the last-named case it was said by Mr. Justice Day, speaking for the court: "It is therefore unnecessary for a customer, where shares of stock of the same kind are in the hands of a broker, being held to satisfy his claims, to be able to put his finger upon the identical certificates of stock purchased for him. It is enough that the broker has shares of the same kind which are legally subject to the demand of the customer."

■ Much is said in the briefs, and repeated in the argument, to the effect that all of the shares of stock now held by the Alien Property Custodian have been allocated by the bank to other customers and claimed and identified by them as their particular prop-

erty, and it is likewise said that appellants' certificates of stock are among those held by the British custodian and never turned over to the American Custodian, and that appellants, more than five years prior to this suit, accepted such designation of certificates as complying with the obligation of the bank to them, and, relying upon this allocation, brought suit in New Jersey against the corporation issuing such certificates for a reissue, and were unsuccessful as against the superior claim of the British custodian. All of this, if true, would be a complete answer to appellants' suit, but we cannot consider these matters on this appeal, since to do so would be to import into the record something which is not there. Had they been pleaded and proved, there would have been an end to the case, and the delay which has ensued, and must ensue before the property may be turned over to those entitled to it, would have been avoided.

One other point remains to be noticed. It is that the bill is defective because of nonjoinder of necessary parties. Undoubtedly all parties claiming the shares of stock held by the Custodian are necessary parties and must be joined in any litigation affecting the right to the property. If they cannot legally be made parties, the suit cannot proceed, but we think that section 105 of the District Code (1924), D. C. Code 1929, T. 24, § 378, covers just such a case as this. It declares that publication or personal service of process outside the District may be had against a nonresident in any suit involving a claim or demand to or against any real or personal property within the jurisdiction of the court. There can be no doubt, we think, that the shares of stock which appellants claim were within the jurisdiction of the lower court because they were held by the Alien Property Custodian in Washington in the District of Columbia, and we think that the quoted provision of the Code gave the court complete jurisdiction to assemble all the necessary parties to the end that the right and title to the property might be finally determined. This is what we decided in Jones v. Rutherford, 26 App. D. C. 114, and repeated recently in Doerschuck et al. v. Mellon, 60 App. D. C. 383, 55 F.(2d) 741, decided December 21, 1931.

We think, therefore, that the plea to the jurisdiction should be overruled, and since, as we have already indicated, the bill shows an equitable title to the shares of stock which are the subject of dispute, we think the case is one for a court of equity rather than a court of law. Besides, the act of Congress (supra, section 9 (e) so provides.

Reversed and remanded to the Supreme Court of the District, with instructions to reinstate the bill, with leave to appellants to amend by adding necessary parties, and for service of process under the provisions of section 105, D. C. Code 1924 (Tit. 24, § 378, D. C. Code 1929).

Reversed and remanded.