**BALTER et al. v. ICKES, Secretary of Interior, et al.**

No. 6827.

United States Court of Appeals for the District of Columbia.

Argued Jan. 13, 14, 1937.

Decided March 8, 1937.

Edmund M. Toland, of Washington, D. C. and David H. Robertson, of St. Louis, Mo., for appellants.

Ralph S. Boyd, of Washington, D. C., for appellees.

Bon Geaslin, of Washington, D. C., and Edgar H. Wayman and Clifford Greve, both of St. Louis, Mo., amici curiæ, for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

VAN ORSDEL, Associate Justice.

This is a special appeal from an order of the District Court of the United States for the District of Columbia, denying an application for an injunction pendente lite.

It appears that by a joint resolution approved June 15, 1934 (48 Stat. 967), Congress established the "United States Territorial Expansion Memorial Commission" for the purpose of formulating plans for the construction of a permanent memorial in St. Louis, Mo. The Commission proposed that the United States acquire a tract of land along the Mississippi river at St. Louis, described in the bill as "District A," as a site for the proposed memorial. Thereafter the Secretary of the Interior determined that the land in question constituted an historic site within the meaning of the Historic Sites Act of August 21, 1935, 49 Stat. 666 (16 U.S.C.A. § 461 et seq.).

The General Assembly of Missouri, in an Act approved April 10, 1935 (Mo.St. Ann. § 14268a et seq., p. 6163), authorized the city of St. Louis to sell its bonds not in excess of $8,000,000 "for the purpose of providing funds to pay by way of assistance to the United States, or its qualified authority, in consideration of and in order to induce the location and establishment within such city" (Mo.St.Ann. § 14268b, p. 6163) of a national park or plaza, covering not less than one million square feet. In accordance with this act the board of aldermen of St. Louis adopted an ordinance calling for an election and submitting to the voters of the city the proposition whether or not bonds should be issued for this purpose. An election was held, and the proposition was duly approved by two-thirds of the qualified electors voting at this election. Thereafter the board of aldermen passed a second ordinance authorizing the issue and sale of the bonds.

On December 21, 1935, the President signed an Executive Order by virtue of the authority vested in him under the Emergency Relief Appropriation Act of 1935, 49 Stat. 115 (15 U.S.C.A. § 728 note), allocating to the Secretary of the Interior, from the funds made available by said act, "the sum of $6,750,000 which with the sum of $2,250,000 to be contributed by the City of St. Louis and accepted by the Secretary of the Interior * * * will make available for the said project the total sum of $9,000,000," which the Secretary, through the National Park Service, was authorized and directed to expend in acquiring and developing the site in question.

Thereafter the board of aldermen of St. Louis passed a third ordinance, authorizing and directing the mayor and comptroller of the city to pay to the Secretary of the Interior $2,250,000, "representing the one-fourth (¼) share of the City of St. Louis of the total amount of Nine Million Dollars ($9,000,000) to be expended by the United States of America, through the Secretary of the Interior, through the National Park Service, in acquiring, developing and preserving a site within the limits of the City of St. Louis for a national park or plaza, to be known as the Jefferson National Expansion Memorial." It accordingly appropriated the sum of $2,250,000 out of proceeds derived from the sale of bonds, to be paid into the Treasury of the United States to the credit of the Secretary of the Interior.

This action was brought by the appellants, who claim various interests in parts of the area intended to be acquired for this memorial and set forth the damages which they will sustain if the project is carried through to completion. The suit was brought against the Secretary of the Interior, the Director of the National Park Service, and the Secretary of the Treasury, seeking an injunction to restrain them, pendente lite and permanently, from using either the $6,750,000 allocated by the President or the $2,250,000 paid into the Treasury by the city of St. Louis for acquiring and improving the proposed site. The authority of the Secretary of the Treasury to pay to the Secretary of the Interior or the Director of the National Park Service the sum allocated by the President, or the sum donated by the city of St. Louis, as well as the power of the Secretary of the Interior and the Director of the National Park Service to ex-

pend these moneys for the purpose for which they were allocated and paid into the Treasury, is attacked, and a declaratory judgment is prayed to the effect that no such power and authority exist.

The constitutionality of the Historic Sites Act, 49 Stat. 666 (16 U.S.C.A. § 461 et seq.), is challenged as being in violation of section 8 of article 1 of the Constitution and of the Tenth Amendment, since it is alleged that the funds are intended to be used for the local welfare and benefit of St. Louis. Appellants further contend that neither title II of the National Industrial Recovery Act (48 Stat. 200, § 201 et seq., 40 U.S.C.A. § 401 et seq.) nor the Emergency Relief Appropriation Act of 1935 (15 U.S.C.A. § 728 note) authorizes the allotment of this money; and that said acts are unconstitutional and void. The power of the defendants to use any part of the $2,250,000 paid into the Treasury by the city of St. Louis is assailed on the ground that it was received by the United States impressed with a trust requiring it to be used only for the purpose for which it was raised, and, since the amount voted by the city of St. Louis under the ordinance authorizing the election was $7,250,000, to aid in the acquiring and developing of a national park or plaza, to cost $30,000,000, the city was wholly without authority to pay into the Treasury the sum of $2,250,000 as its share of the cost of the $9,000,000 project, rather than for the purpose indicated by the voters of St. Louis.

■ At the threshold of this case we are confronted by an objection which, if well taken, is fatal to appellants' cause of action. It is urged by the defendants that the city of St. Louis is an indispensable party to this suit. It does not appear that this objection was urged at the hearing on the application for injunction pendente lite, though it is a ground of the motion to dismiss, which is incorporated in the joint answer of the Secretary of the Interior and the Director of the National Park Service. While this appeal is from an interlocutory order, and is therefore special, inasmuch as this objection goes to the jurisdiction of the lower court, it must be considered here, since, if it is sound, it becomes unnecessary for us to consider the other issues involved.

■ We are thus brought to an examination of the exact relationship created between the United States and the city of St.

Louis with reference to this proposed undertaking. From an examination of the various orders, enactments, and ordinances, it appears that the United States proposed to establish this memorial in St. Louis, provided the city would pay into the Federal Treasury $2,250,000, or one-fourth of the cost of the project. We think that the action of the city of St. Louis in raising its portion of the money and paying it into the Treasury constituted an acceptance of the offer of the United States, and resulted in a contract. So far as the city is concerned, the contract has been executed. All that remains to be done is for the United States to carry out its part of the agreement by constructing the proposed memorial. This is not a case where the United States was proposing to build this memorial regardless of the assistance of the city, and the city gratuitously contributed one-fourth of the total cost. The executive order allocating the $6,750,000 specifically provided that it was to be expended only when the city paid over the sum of $2,250,000.

■ We think this creates a situation where the city of St. Louis is unquestionably an indispensable party. It is the general rule in equity that, in order that a final and complete decree may be made, all persons "are to be made parties who are legally or beneficially interested in the subject matter and result of the suit." Caldwell v. Taggart, 4 Pet. 190, 202, 7 L.Ed. 828; Gregory v. Stetson, 133 U.S. 579, 586, 10 S.Ct. 422, 33 L.Ed. 792.

In the leading case of Shields v. Barrow, 17 How. 130, 139, 15 L.Ed. 158, the court, in pointing out the three classes of parties to a bill in equity, said: "They are: 1. Formal parties. 2. Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. These persons are commonly termed necessary parties; but if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties. 3. Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest,

or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience. A bill to rescind a contract affords an example of this kind. For, if only a part of those interested in the contract are before the court, a decree of rescission must either destroy the rights of those who are absent, or leave the contract in full force as respects them; while it is set aside, and the contracting parties restored to their former condition, as to the others. We do not say that no case can arise in which this may be done; but it must be a case in which the rights of those before the court are completely separable from the rights of those absent, otherwise the latter are indispensable parties."

All whose interests will be affected by the decree, that is, all persons materially interested either legally or beneficially in the subject matter of the suit, must be made parties. Ribon v. Railroad Companies, 16 Wall. 446, 450, 21 L.Ed. 367; Commonwealth Trust Co. v. Smith, 266 U.S. 152, 158, 45 S.Ct. 26, 69 L.Ed. 219.

The test in the instant case is whether a final decree can be entered without affecting the interest of the city of St. Louis. The interest of the city here unquestionably is to have the United States carry out its part of the agreement, and, while the city could not obtain specific performance against the United States; as it might against a private individual, its interest remains and might be vitally affected by any decree which might be entered in this case.

Both parties are essential to the completion of this enterprise. Neither party could proceed with its completion without the co-operation of the other. Therefore, although the agreement is executed on the part of the city, in so far as the payment of its portion is concerned, questions will undoubtedly arise involving the future maintenance and upkeep of the memorial when it is completed, in which the city would have a vital interest.

This is not a suit by one of the parties to the contract, seeking to annul it, but by third parties, asserting a somewhat questionable interest, who attempt to defeat the carrying out of the agreement. It follows, we think, that before any final decree adjudicating the issues can be entered, all the parties to the contract must be before the court and be given an opportunity to be heard.

In Roberts v. Bradfield, 12 App.D.C. 453, 458 a third party attempted to defeat a contract between the Commissioners of the District of Columbia and the Providence Hospital by suing to restrain the Treasurer of the United States from paying out any money under the contract. This court, in considering the defect in parties, due to the failure of the plaintiff to bring in the parties to the contract, said: "The persons directly interested in defending this suit are the parties to the contract which the plaintiff seeks to annul. They are the Commissioners of the District, on the one hand, who have acted in the performance of a duty imposed by law; and the Providence Hospital, on the other, which has promised a consideration valuable in law. Had objection been made on account of their nonjoinder the trial court would, no doubt, have ordered the plaintiff to make them parties defendant, under the penalty of dismissal of his bill. The defect being palpable and having been pressed upon our attention on the argument, we have no doubt of our power—indeed, it is questionable if it is not our duty—to reverse the decree because of the omission of the plaintiff to bring into the controversy the parties aforesaid who are directly and substantially interested in the result."

Nor are we impressed by the contention that, notwithstanding the payment by the city of St. Louis into the Treasury, the suit is separable as to the $6,750,000 allocated by the President. This contention cannot be sustained, for the manifest reason that the order of the President specifically authorizes the Secretary of the Interior to expend the full sum of $9,000,000 in acquiring and developing the property in question, which includes the use and appropriation of the money paid in by the city, and, if defendants were restrained from using the $6,750,000 allocated by the President, the project would fail and the city's interest in having it constructed, and in consideration of which it paid its money, would be adversely affected and the agreement in effect annulled, all without the city having an opportunity to be heard.

While this is an appeal from an order denying an application for a preliminary injunction, it is clear to us that the lower court cannot proceed further in the absence of the city of St. Louis. We therefore affirm the order appealed from, without passing upon the other questions raised.

The order is affirmed.