**GREEN et al. v. BROPHY et al.**

No. 7381.

United States Court of Appeals for the
District of Columbia.

Decided Jan. 15, 1940.

Charlton Ogburn and Arthur E. Reyman, both of Washington, D. C., for appellants.

Lee Pressman, Sidney V. Smith, and Joseph Kovner, all of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and STEPHENS and VINSON, Associate Justices.

VINSON, Associate Justice.

The appellants, individually, in their respective official capacities, and as representatives of the American Federation of Labor (hereinafter referred to as the plaintiff) brought an action in equity against the appellees, in similar capacities representing the Committee for Industrial Organization (hereinafter referred to as the defendant), to recover for the plaintiff, as trustee, some $29,212.72 which the Aluminum Workers' Union No. 18356 of New Kensington, Pennsylvania, an A. F. of L. federal labor union (hereinafter referred to as the union), transferred to the defendant in trust or in custody for the use and benefit of said union. The defendant moved that the · amended bill of complaint be dismissed on several grounds, one of which was the alleged failure of the plaintiff to join indispensable parties—the union, its representatives, and/or those of its members who are legally and beneficially interested in the subject matter and result of this action. The motion to dismiss was sustained and the plaintiff appeals from that order. In support of the court's ruling defendant here urges only that the complaint is defective in failing to join such indispensable parties.

In substance, the material allegations of the plaintiff's bill of complaint are as follows:

The Aluminum Workers' Union of New Kensington, Pennsylvania, was established and granted a "Certificate of Affiliation", or charter, on August 1, 1933, as a federal labor union under the direct jurisdiction of the plaintiff. Said certificate or charter granted the union certain "autonomy" but provided that "the said Union * * * do conform to the Constitution, Laws, Rules and Regulations of the American Federation of Labor, and in default thereof or any part, this Certificate of Affiliation may be suspended or revoked according to the laws of this Federation. And should the said Aluminum Workers' Union No. 18356 be dissolved, suspended or forfeit this Certificate of Affiliation, then the persons to whom this Certificate of Affiliation is granted, or their successors, bind themselves to surrender the same with such other property as shall properly belong to this Federation. * * *"

The Constitution of the plaintiff provides in Article X for its revenue by levying certain per capita taxes, and Section 3 thereof provides: "Any organization affiliated with this Federation not paying its per capita tax on or before the 15th day of each month shall be notified of the fact by the Secretary-Treasurer of the Federation, and if at the end of three months it is still in arrears it shall become suspended from membership by the Federation, and can be reinstated only by a vote of the Convention when such arrearages are paid in full, as provided in Section 2 of this Article."

Article XIII, Section 16 of the said constitution provides: "That * * * Federal Labor Unions shall be prohibited from assessing their members or appropriating their funds for any purpose other than union or American Federation of Labor purposes."

Section 17 of the same article provides: "No * * * Federal Labor Union, * * * shall disband so long as seven members * * * desire to retain the charter. Upon the dissolution, suspension or revocation of the charter of any * * * Federal Labor Union, * * * all funds and property of any character shall revert to the American Federation of Labor, to be held in trust until such time that the suspended or defunct organization may be reorganized and ready to confine its activities and actions to conform with recognized enforceable laws of the American Federation of Labor. It

shall further be the duty of the officers of the * * * Federal Labor Union, * * * which has been dissolved, or whose charter has been suspended or revoked, to deliver all funds and property to the President of the American Federation of Labor or a representative whom he may designate for that purpose."

The union remitted no per capita tax for any month after November, 1936.

At a meeting of the union on or about March 5, 1937, those present voted to "deliver or transfer the funds of the Union to the C.I.O. for the use and benefit of said Union". Said delivery or transfer involved $29,212.72 and was made in March 1937. The defendant deposited the funds in its own name in the Lincoln National Bank of Washington, D. C. At all times a "substantial number" of the union's members in excess of seven, and "upon information and belief approximately several hundred", opposed the transfer and "desired to retain their membership in said union and their affiliation with the Federation".

On May 28, 1937, "after giving due and ample notice to the union by registered mail of the charges and the arrearages in payment of per capita taxes as aforesaid, and holding a hearing thereon, the Executive Council of the American Federation of Labor, a duly constituted body having jurisdiction over the subject matter, did revoke the charter of Aluminum Workers' Union, No. 18356; that the Federation gave notice of said revocation to said union in writing, and made demand for the funds, books of account and all other property of said union to be turned over to the Federation to be held in trust pursuant to Article XIII, of Section 17, of the Constitution of the Federation aforesaid." Prior to this determination of the union's existence, a large number of the members thereof seceded from membership in said union, and from affiliation with the plaintiff.

The complaint further alleges that "by reason of the delivery or transfer of the amount of money as aforesaid to the C.I.O., the trust provided for as aforesaid has been impaired and will fail unless the same is enforced for the benefit of all of the members of the Federation, and particularly the members of the Federal labor union to be reorganized to confine its activities and actions to conform with recognized enforceable laws of the Federation; * * *". Relief prayed for is a court decree ordering the defendant to make restitution by paying to the plaintiff the sum of $29,212.72, and enjoining it from acting in any manner to defeat the enforcement and operation of the trust.

The only question presented on this appeal from the order of the District Court dismissing the complaint is whether it appears from these allegations of the complaint that indispensable parties to this action have not been joined.

Indispensable parties have been defined by this court as "All whose interests will be affected by the decree, that is, all persons materially interested either legally or beneficially in the subject matter of the suit * * *." Balter v. Ickes, 67 App.D.C. 112, 115, 89 F.2d 856, 859; Ducker v. Butler, 70 App.D.C. 103, 104 F.2d 236; Flynn v. Brooks, 70 App.D.C. 243, 105 F.2d 766, decided May 22, 1939. Other judicial pronouncements have been to the same effect. See Franz v. Buder, 8 Cir., 11 F.2d 854, 856, 857. It is important to note that whether a party is indispensable depends on something other than the effect of a decree as res adjudicata upon him. Of necessity that must be so, else absent parties would never be indispensable.[1] The guiding principle, determining the indispensability of absent parties, was enunciated by the Supreme Court in California v. Southern Pacific Company, 157 U.S. 229, 255, 15 S.Ct. 591, 601, 39 L.Ed. 683, as follows: "Irrespective * * * of the extent, technically speaking, of the effect and operation of a decree * * * as res adjudicata, it is impossible to ignore the inquiry whether the interests of persons not before the court would be so affected, and the controversy so left open to future litigation, as would be inconsistent with equity and good conscience."[2] That this represents the proper inquiry is supported by the fact that litigation requiring decision as to the legal conse-

---

[1] A decree operates as res adjudicata only upon parties to the action or persons whose interest is represented by one of the parties. See Kerrison v. Stewart, infra. Against all other "absent parties", the decree is not res adjudicata.

[2] Followed in Arizona v. California, 298 U.S. 558, 568–572, 56 S.Ct. 848, 80 L.Ed. 1331; Texas v. Interstate Commerce Comm., 258 U.S. 158, 163, 42 S.Ct. 261, 66 L.Ed. 531. See also cases cited infra note 3.

quences to be attached to a relationship where only one party thereto is made a party to the action is perhaps the clearest case of failure to join an indispensable party.[3]

To this rule, that persons with a material interest which a decree will affect are indispensable parties, there is a corrollary which is of some importance here. As cases cited by the plaintiff indicate, persons with a very real interest in the subject matter of a controversy which a decree will affect may not reach the stature of indispensable parties, if they are cestui que trusts whose interests their trustee may adequately represent in the particular litigation. "It cannot be doubted, that, under some circumstances, a trustee may represent his beneficiaries in all things relating to their common interest in the trust property. He may be invested with such powers and subjected to such obligations that those for whom he holds will be bound by what is done against him, as well as by what is done by him. The difficulty lies in ascertaining whether he occupies such a position, not in determining its effect if he does. If he has been made such a representative, it is well settled that his beneficiaries are not necessary parties to a suit by him against a stranger to enforce the trust [citing cases]; or to one by a stranger against him to defeat it in whole or in part. [citing cases]. In such cases, the trustee is in court for and on behalf of the beneficiaries; and they, though not parties, are bound by the judgment, unless it is impeached for fraud or collusion between him and the adverse party". Kerrison v. Stewart, 93 U.S. 155, 160, 23 L.Ed. 843.[4]

Where, however, the trustee may not be fairly said to represent the interests of his cestui que trusts, the latter are indispensable parties to litigation involving the trust. Rand v. Walker, supra (nothing in the pleadings to show that the trustee

was authorized to represent the beneficiary in respect to litigation concerning the property); Franz v. Buder, supra, (conflict between cestui que trusts); Talbutt v. Security Trust Co., D.C., 22 F.Supp. 241, (suit by one beneficiary against trustee to compel restoration of portion of trust fund); Shirk v. Walker, Mass., 10 N.E.2d 192 (suit to remove a trustee and order a present distribution of accumulated income); 3 Bogert, Trusts and Trustees, § 522 (in suits to remove trustees "They [beneficiaries] must all be parties to the action in some capacity. * * * And, where the beneficiaries are very numerous, a representative suit is possible."). See also Baltimore, C. & A. Ry. Co. v. Godeffroy, 4 Cir., 182 F. 525 (in suits between various classes of stockholders the corporation cannot represent one class as against another).

In the instant case, the plaintiff asserts a trusteeship over funds of the union which the latter transferred to the defendant, thereby requiring decision as to the legal consequences to be attached to the two relationships to which the union and its members are parties.

The first is the legal relationship between the union and the plaintiff arising out of their contract as embodied in the union's "Certificate of Affiliation", or charter, and the plaintiff's constitution. Under Sec. 17 of Art. XIII of that constitution, the plaintiff cannot assert a trusteeship over any funds of the union unless it can show a dissolution of that relationship, i. e., the legal revocation of the union's charter. Thus trial of this action will require, in the first instance, a judicial determination respecting the union's status. The union, party with the plaintiff to this legal relationship, has not, however, been joined as a party to this action. As heretofore expressed, litigation requiring decision as to the legal consequences to be attached to a relationship where only one party to the relationship is made a party

---

[3] Shields v. Barrow, 17 How., U.S., 129 139, 15 L.Ed. 158; Williams v. Bankhead, 86 U.S. 563, 19 Wall. 563, 22 L.Ed. 184; Commonwealth Tr. Co. v. Smith, 266 U.S. 152, 159, 45 S.Ct. 26, 69 L.Ed. 219; Minnesota v. Northern Securities Co., 184 U.S. 199, 22 S.Ct. 308, 46 L. Ed. 499; Niles-Bement-Pond Co. v. Iron Moulders Union, Local No. 68, 254 U.S. 77, 41 S.Ct. 39, 65 L.Ed. 145; California v. Sou. Pac. Co., supra; Consolidated Edison Co., v. N. L. R. B., 305 U.S. 197,

233, 59 S.Ct. 206, 83 L.Ed. 126; Balter v. Ickes, supra; Flynn v. Brooks, supra; Ducker v. Butler, supra.

[4] See also Carey v. Brown, 92 U.S. 171, 23 L.Ed. 469; Rand v. Walker, 117 U. S. 340, 6 S.Ct. 769, 29 L.Ed. 907; Vetterlein v. Barnes, 124 U.S. 169, 8 S.Ct. 441, 31 L.Ed. 400; Dalton v. Hazelet, 9 Cir., 182 F. 561; McMurray v. Chase Nat. Bank of City of New York, D.C., 10 F.Supp. 960.

to the action is perhaps the clearest case of failure to join an indispensable party.[5] That precisely describes the instant situation. Hence, the union must be regarded as an indispensable party to this action concerning its relationship with the plaintiff, and must affirmatively be given an opportunity to assert its rights in respect to this matter.

The existence of the union is inconsistent with the plaintiff's trusteeship over its funds, thus Carey v. Brown, supra, and other cases cited by plaintiff respecting the right of a trustee in some instances to represent his cestuis que trust, are manifestly inapplicable.

The second relationship which is called into question by this action is that between the union and its former membership on the one hand, and the defendant on the other. In transferring the union's funds to the defendant, to be held in trust or in custody for the said union, the union and its membership as of that date by that act asserted a right to the funds in question adverse to the plaintiff, and established a legal relationship (whether trust, agency, bailment, or credit in nature) with the defendant. In order to succeed in the instant case, the plaintiff must secure a judicial determination that the union's transfer of the funds to the defendant was wrongful, accompanied by a decree ordering the latter to deliver them to the plaintiff. Thus a decree in this action will affect this second relationship in a very real sense. Indeed, plaintiff argues that a decree here would be a complete defense to any suit for the funds brought against the defendant. We do not here find it necessary to pass upon the question of whether such decree would be res adjudicata against the union and its former membership in respect to their legal relationship to the defendant, or their claims to the funds in question, for that is not decisive of the status of the union or its former membership as indispensable parties. See California v. Sou. Pac. Co., supra. It is sufficient to note that such a decree would plague the union or its former members in any subsequent suit against either the defendant or the plaintiff in respect of these funds.

By reason of their legal relationship with the defendant, and their respective claims to the funds in question, it seems clear that both factions of the membership of the union as of the date of the transfer of the funds, and the union have material interests which a decree in this controversy will affect. As above indicated, however, persons with a very real interest in the subject matter of a controversy which a decree will affect may not reach the stature of indispensable parties, if they are cestui que trusts whose interests their trustee may adequately represent in the particular litigation. The plaintiff brings this action as trustee against the defendant for the funds in question which the "Union intended * * * to place * * * in trust or in the custody of the C.I.O. for the use and benefit of the said Union".

May either the plaintiff or the defendant represent, as trustee, the union and its membership as of the date of the transfer of the funds, as cestui que trusts? If not, such parties must be deemed indispensable.

It would appear that plaintiff in this proceeding may represent the beneficiaries of the alleged A. F. of L. trust. Carey v. Brown, supra. The identity of those beneficiaries, however, presents a rather puzzling question—in accordance with the express language of the plaintiff's constitution, the plaintiff would hold the recovered funds in trust for an A. F. of L. Aluminum Workers' Union of New Kensington, Pennsylvania, to be reorganized in the future. In this proceeding, plaintiff denies the present existence of any such union. Without regard to the identity of the beneficiaries of the plaintiff's trust, it is sufficient for our purposes to note that membership in the union as of the date of the transfer of the funds to the defendant, or even as of the date of the alleged charter revocation, would not confer a beneficial interest in the plaintiff's trust. Hence, the plaintiff may not, and by its allegation that the union's existence has been terminated it, in effect, denies that it does, represent as trustee the union. Moreover, since former members, as such, cannot, under the section above referred to, be cestui que trusts of the plaintiff's trust, the plaintiff cannot in this proceeding represent as trustee the interests of the former membership of the union.

The remaining question is whether the defendant is in such a relationship with the union's membership as of the date of the transfer of the funds and the union

---

5 See cases cited supra, Note 3.

itself that it may represent them in this controversy.

■ Fundamental objection to such representation of the union or its former members by the defendant lies in the failure of the plaintiff to allege with any particularity the nature of the defendant's possession of the fund in question. It alleges only that "the Union intended by the delivery or transfer of the amount of $29,212.72 to place said amount in trust or in the custody of the C.I.O. for the use and benefit of said Union". Such an allegation is insufficient to apprise this court of the right of the defendant as trustee to represent the union, or its former members, in a hostile suit to appropriate the transferred funds. See Rand v. Walker, 117 U.S. 340, 344, 6 S.Ct. 769, 29 L.Ed. 907; Kerrison v. Stewart, 93 U.S. 155, 160, 23 L.Ed. 843. Moreover, grave doubts may be raised as to whether the defendant could properly represent the union and its former members. Certainly it could not pretend properly to represent an A. F. of L. federal labor union or those members loyal to the A. F. of L. Even as to those sympathetic to the defendant a question might be raised. One defense to this action might be a denial of the effectiveness of the revocation of the union's charter. It would be passing strange for the defendant, seeking in this general situation to completely supplant the plaintiff, to be charged with the responsibility of protesting in court that the plaintiff's union retains life and vigor.

We are constrained to conclude that the plaintiff has failed to establish the presence of any party in this proceeding qualified to represent the two factions of the membership of the union as of the date of the transfer of the funds in question, and the union itself. We hold, therefore, that such persons, or proper representatives thereof, are indispensable parties to this litigation. Compare the disposition of the famous controversy between two rival factions in the Presbyterian Church, where it was stated that the indispensable parties to that litigation were representatives of the two rival factions, while trustees of the property in question were characterized as merely nominal parties. Helm v. Zarecor, 222 U.S. 32, 32 S.Ct. 10, 56 L.Ed. 77; Sharpe v. Bonham, 224 U.S. 241, 32 S.Ct. 420, 56 L.Ed. 747; Helm v. Zarecor, D.C., 213 F. 648; Sharp v. Bonham, D.C., 213 F. 660, 661.

■ Plaintiff has argued that on a motion to dismiss, the allegations of a complaint are to be taken as true and, since they allege the nonexistence of the union, the union cannot be a party at all, much less an indispensable one. As indicated by Green v. Gravatt, 19 F.Supp. 87, D.C. W.D.Pa., however, whether the union has a present existence presents questions of law as well as fact. In that case, this same plaintiff, asserting this same trusteeship, sought to enjoin this same union and its officers from transferring these same funds to the defendant. By asserting its trusteeship, plaintiff in that proceeding perforce asserted the non-existence of the union—but it made the union and its officers party defendants, indicating a belief on its part at that time that an allegation of non-existence would not deprive the union of capacity for a court appearance to assert whatever rights it possessed. The court held there, contrary to plaintiff's contention, that the three months' grace period did not begin to run on a month's default in payment of per capita taxes until the 15th of the next month; that termination of the union's existence, upon failure to pay the said taxes, was not automatic under the plaintiff's constitution, and, further, suggested that notice to the union and a hearing might be essential to the validity of any revocation of the union's charter. The court there determined that on the facts alleged the union continued in existence. That decision demonstrates that whether the facts in the instant case were such that under its constitution the plaintiff could revoke the union's charter; whether the procedure followed was proper; whether notice and hearing is required; whether that given was sufficient, and kindred issues present questions of law that must be determined before a court may conclude that the union is non-existent. In the last analysis the ultimate conclusion as to the union's legal existence or non-existence is a conclusion of law. It is familiar learning that allegations as to matters of law are not admitted on a motion to dismiss.[6] Hence,

6 Newport News Shipbuilding & Dry Dock Co. v. Schauffler, 303 U.S. 54, 57, 58 S.Ct. 466, 82 L.Ed. 646; Fletcher v. Jones, 70 App.D.C. 179, 105 F.2d 58; Pacific States Box & Basket Co. v. White, 296 U.S. 176, 185, 56 S.Ct. 159, 80 L.Ed. 138, 101 A.L.R. 853; Putnam v. Ickes, 64 App.D.C. 339, 78 F.2d 223; Nortz v.

on a motion to dismiss for lack of indispensable parties, the court is not justified in basing any assumption in respect to the union's existence on plaintiff's allegations. Since one of the legal issues to be the subject of an adjudication by the court is whether the union exists, a decision by this court on that issue would manifestly be improper in considering a motion to dismiss for lack of a party indispensable to determination of that very issue. Indeed, the first issue to be determined by the district court concerns the legal consequences to be attached to the relationship between the union and the plaintiff, hence the union at this stage of the proceeding must be regarded as an indispensable party. To rule otherwise would permit the plaintiff to raise itself by its own bootstraps. Failure to secure an answer from the union will, of course, not prejudice the right of both factions of the former membership of the union, and the defendant, to contest the effectiveness of the revocation of the union's charter.

■ In this view, the district court properly sustained the motion to dismiss the complaint for want of indispensable parties. When it appears, however, that the missing parties are subject to the jurisdiction of the court, leave should be granted the complainant to amend his bill joining the indispensable parties.[7] In the instant case the complaint alleges that the plaintiff, with principal offices in this jurisdiction, brings this action to recover a trust res, allegedly in this jurisdiction in the form of a deposit in a local bank, from the defendant, with principal offices in this jurisdiction, in whose name the deposit stands. The indispensable parties not presently before the court reside outside this jurisdiction, but this action concerns personal property which they sent into this jurisdiction and no legal fiction appears to negative its continuing situs here. It would seem that under the decisions of this court such trust res is personal property within this jurisdiction within the meaning of Section 105 of the District of Columbia Code, 1924, D.C. Code 1929, T. 24, § 378, providing that publication or personal service of process outside the District of Columbia may be had against a non-resident in any suit involving a claim or demand to or against any real or personal property within the jurisdiction of the court.[8]

■ We cannot here finally decide that the absent union and its membership as of the date of the transfer of the funds may be subjected to the jurisdiction of the District Court by constructive service of process, but, since it appears that such may be the case, the plaintiff must be given an opportunity to join them as parties.

The order of the District Court sustaining the motion to dismiss the complaint is affirmed, but leave is granted plaintiff to amend the complaint joining the indispensable parties, to the end that "the interests of persons not before the court [should not] be so affected, and the controversy so left open to future litigation, as would be inconsistent with equity and good conscience".[9]

Affirmed and remanded.

United States, 294 U.S. 317, 324, 55 S. Ct. 428, 79 L.Ed. 907, 95 A.L.R. 1346; United States v. Ames, 99 U.S. 35, 45, 25 L.Ed. 295.

[7] Minnesota v. Northern Securities Co., supra, 184 U.S. at page 246. 22 S.Ct. 308, 46 L.Ed. 499; Pilger v. Sutherland, 61 App.D.C. 84, 57 F.2d 604.

[8] Doerschuck v. Mellon, 60 App.D.C. 383, 55 F.2d 741 (trust fund in United States Treasury); Morgenthau v. Fidelity & Deposit Co., of Maryland, 68 App. D.C. 163, 94 F.2d 632 (fund in United States Treasury evidenced by undelivered check); Pilger v. Sutherland, supra, (shares of stock); Jones v. Rutherford, 26 App.D.C. 114 (shares of stock). See also Bede Steam Shipping Co. v. New York Tr. Co., D.C., 54 F.2d 658 (cash and government obligations deposited with trust company).

[9] California v. Sou. Pac. Co., supra.