## ZWACK et al. v. KRAUS BROS. & CO., Inc.

### Civ. No. 58—182.

United States District Court,
S. D. New York.

Nov. 2, 1950.

964

Riegelman, Strasser, Schwarz & Spiegelburg, New York City (Laurence Rosenthal, New York City, of counsel), for plaintiffs.

Clarence P. Greer, New York City, for defendant.

MEDINA, District Judge.

Defendant has moved to dismiss the complaint pursuant to the provisions of Rules 12(b) (7) and 19, Federal Rules of Civil Procedure, 28 U.S.C.A.(,) on the ground that indispensable parties have not been joined.

This action is brought by John and Bela Zwack on behalf of J. Zwack & Co., a Hungarian partnership which manufactures and distributes alcoholic beverages under the trade-marks "Zwack", "J. Zwack & Co.", "J. Zwack", and "Zwack, J.". All of these marks are registered in the United States Patent Office.

Defendant is a New York corporation which, in 1933, entered an agreement with the partnership whereby defendant became the exclusive distributor of the partnership's products in the United States. Allegedly pursuant to other agreements,

defendant secured registrations of the trade-marks in its own name but for the benefit of the partnership and subject to its directions and withheld part of the moneys due to the partnership on sales made since 1939, crediting those moneys to the partnership's account. Defendant's contract of exclusive distribution is not due to expire until 1960.

Plaintiffs allege that in 1948 the Government of Hungary seized the partnership's factory and confiscated it without compensation, and continued to operate it under its old name and to manufacture products to which the old trade-marks were affixed. Bela Zwack apparently remained with this governmentally owned enterprise in some capacity, but there is no competent proof before me that he did so or as to his present status or whereabouts. John Zwack left Hungary on November 18, 1948 because, he states, he had been informed that he was in danger of being "liquidated." Immediately after his departure he notified the defendant of what had occurred and requested the defendant to terminate its dealings with the individuals who were then operating the partnership business. This, it is alleged, defendant declined to do, and, it is claimed, defendant has continued to import and distribute the output of the factory.

Plaintiffs now sue on the partnership's behalf for trade-mark infringement, for an accounting, for specific performance of the agreement concerning the American trade-mark registrations, and to recover the sum of approximately $25,000 which, according to the allegations of the complaint, constitutes the deferred payments for goods sold by defendant since 1939.

■ Defendant's motion to dismiss is based on the contention that Bela Zwack, admitted by the plaintiffs to be a copartner, his wife Dora, claimed by the defendant to be also a copartner, the Hungarian Government, and the "presently existing firm of J. Zwack & Company of Budapest, Hungary," are indispensable parties. Since these parties are not subject to the jurisdiction of the Court, unless they should voluntarily appear, which on the record before me seems unlikely, it is apparent that to grant defendant's motion would be to deny the plaintiffs any remedy and this result a court will properly "strain" to avoid. See Bourdieu v. Pacific Western Oil Co., 1936, 299 U.S. 65, 70, 57 S.Ct. 51, 81 L.Ed. 42.

■ Two practical factors seem to me to be at the root of the indispensable party rule. First is the desirability of avoiding a determination which will affect the interests of persons who are not before the court. See Green v. Brophy, 1940, 71 App. D.C. 299, 110 F.2d 539, 541. Second is the desirability of protecting a defendant from a second liability on the same obligation should some court subsequently decide issues of fact in favor of the absent third party. Russian Reinsurance Co. v. Stoddard, 1925, 240 N.Y. 149, 147 N.E. 703. However, the rule is one fashioned in equity and the courts have taken care lest its application should result in inequity. Parker Rust-Proof Co. v. Western Union Telegraph Co., 2 Cir., 1939, 105 F.2d 976, certiorari denied 1939, 308 U.S. 597, 60 S. Ct. 128, 84 L.Ed. 500.

■ In so far as the first practical consideration is involved, much will turn on the substantiality of the asserted interests which, it is claimed, will be affected by the determination of the issues raised by the complaint. When the existence of interests in third persons is conceded, the problem is merely one of appraising the effect an adjudication in the pending action will have on those interests. Most of the indispensable party cases deal with such a situation. See cases cited in Baldwin v. Chase National Bank of New York, D.C.S.D.N.Y. 1936, 16 F.Supp. 918, 920. Where the very existence of such interests is disputed, however, the problem differs. While it would be improper to determine on such a motion as this that third persons who are not before the court have no legal rights in the property in suit, Green v. Brophy, supra, nevertheless some appraisal of the substantiality of those asserted interests must be made, otherwise a court

could not act whenever a claim was made by a defendant that an absent third party was vested with an interest adverse to that of the plaintiff, which would be affected by the litigation then in progress.

■ The problem is not very difficult as to Bela and Dora Zwack. Under the Hungarian Law, John Zwack is empowered to bring this action on the partnership's behalf to enforce its contractual rights, and the defendant cannot challenge that right. §§ 81, 90, 91 and 93, Law XXXVII, Laws of 1875 of Hungary. They are, therefore, not indispensable parties.

■ Whether the asserted interests of the Hungarian Government and what is termed the "presently existing firm of J. Zwack & Company of Budapest, Hungary" are claimed to arise from a contractual transfer, or from confiscation, on the basis of both the law and the facts now presented for my consideration I deem these asserted interests too insubstantial to warrant a dismissal of the action. The claimed contractual transfer is predicated upon an alleged offer by all the copartners made on November 9, 1948; but the evidence submitted by the defendant, to support its claim that the Hungarian Government has an interest which will be affected, itself demonstrates that the offer was not accepted until after it was withdrawn. The acceptance occurred on November 24, 1948; John Zwack had already fled from the country on that date, and his flight withdrew the offer, since it could not be accepted, by its terms, except by the tender of a passport to him. Moreover, even if the offer was still open on the 24th of November, there was a failure of consideration in that this substantial part of the return performance, indeed the only substantial consideration John Zwack was to receive, was not rendered. Finally, if by some chance the offer remained open and was accepted, the gross disproportion between the value of the partnership assets and the value of the consideration which the Hungarian Government was to furnish in itself raises serious doubts as to whether the offer was a voluntary one, or was, rather, coerced and therefore of no effect.

■ ■ ■ If the claimed contractual interests are insubstantial, the interests possibly derived from confiscation, the only other alternative suggested by the parties, are even more so. Our courts do not recognize the confiscatory acts of foreign governments when those acts purport to affect property which was not within the territorial jurisdiction of that government, unless a national policy of the United States Government requires that such extra-territorial effect should be given. United States v. Pink, 1942, 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796. The property here in suit was at all times within the United States and no national policy requires this Court to recognize the validity of its confiscation by the Hungarian Government.

■ Not only are all these asserted interests thus insubstantial, but the danger of the defendant being held to a double liability is equally remote, due to the nature of the relief sought. In Baglin v. Cusenier Co., 1911, 221 U.S. 580, 31 S.Ct. 669, 55 L.Ed. 863, similar claims were adjudicated without any question such as is before me now. To the extent that there is danger of double liability, the defendant may adequately protect itself by proceeding pursuant to § 51-a of the New York Civil Practice Act, if indeed it is not already protected by a release.

On these facts, it would be most inequitable and a complete, and for all practical purposes a final denial of the claim asserted by plaintiffs to dismiss the action on this motion. Of course, no determination now made is intended to preclude a trial of such issues as may be presented by the pleadings, and there is no denying the possibility, although it now seems little more than that, that a trial may result in a finding that the Hungarian Government or others may be vested with the ownership of the property which plaintiffs here claim. Be that as it may, it would be most inequitable and serve no justifiable practical purpose to dismiss the action now because of that vague possibility.

Motion denied.

Settle order on notice.