**PAN AMERICAN PETROLEUM CORPORATION, Plaintiff,**

v.

**Stewart L. UDALL, Defendant.**
**Civ. A. No. 960–60.**

United States District Court
District of Columbia.

March 15, 1961.

As Amended April 11, 1961.

Neil F. Stull, Washington, D. C., for plaintiff.

Thomas L. McKevitt, Dept. of Justice, Washington, D. C., for defendant.

McLAUGHLIN, District Judge.

This is an action to recover certain compensatory oil royalties paid under protest. There is no dispute as to the material facts, which were introduced at trial by stipulation and exhibits.

Plaintiff is an oil producer, being lessee under a number of oil leases with restricted Indians of the Fort Berthold Indian Reservation in North Dakota.

In 1953, Plaintiff brought in a producing well on the land of one Woodrow Star (the well being hereafter referred to as the Star well). The Star tract was adjacent to the land of another Indian, Ella Many Ribs, with whom Plaintiff also had a lease, but on whose land no well was at this time drilled.

In 1955, the Secretary of the Interior, through his delegate, notified Plaintiff that henceforth it would be required to pay to Ella Many Ribs compensatory royalties in an amount based on 100% of the production of the Star well.

Subsequently, in January, 1956, the amount of compensatory royalty was reduced to an amount based on one half of the combined total production of the Star well, together with a well located on another adjacent property, that of New Year Many Ribs.

Plaintiff protested each of these assessments, contending that the royalties should be based on no more than 3/16 of the production of the Star well. An arrangement was entered into between the parties to the effect that royalty payments in the amount assessed by the Interior Department would be paid by Plaintiff and all funds in excess of an amount based on 3/16 of the production of the Star well, some $11,578.62, would be deposited in escrow, to abide the outcome of this suit. This arrangement was adhered to until 1957, when a well was drilled on the Ella Many Ribs tract, thus

eliminating the need for further payments.

In the oil industry compensatory royalties are royalties paid to a landowner whose land lies adjacent to a producing well, but on whose land no well has been drilled. They are intended to compensate the landowner for losses suffered due to subterranean drainage of oil from his land resulting from the adjacent producing well. They are an alternative to the drilling of a so-called "offset well" to recover the oil before it drains away.

In this case there is no question that some compensatory royalties should have been assessed. The lessor, Ella Many Ribs, is a restricted Indian, whose leases are subject to approval by the Secretary of the Interior or his delegate. Both the lease itself and the applicable Interior Department Regulations (hereafter referred to as Regulations) provide as follows for estimation and payment of compensatory royalties:

"Lease

"(b) Wells—(1) To drill and produce all wells necessary to offset or protect the leased land from drainage by wells on adjoining lands not the property of the lessor, or in lieu thereof, to compensate the lessor in full each month for the estimated loss of royalty through drainage. * * * "

"Regulations

"The lessee shall drill diligently and produce continuously from such wells as are necessary to protect the lessor from loss of royalty by reason of drainage, or in lieu thereof, with the consent of the (Regional Oil and Gas supervisor, he must pay a sum estimated to reimburse the lessor for such loss of royalty the sum to be computed monthly by the supervisor." 30 C.F.R. 221.21(c)

"The supervisor shall * * * estimate drainage and compute the losses to the lessor resulting therefrom * * * The lessor shall render monthly to the lessee * * * statements showing * * * the

loss by drainage or waste and the compensation due to the lessor as reimbursement." 30 C.F.R. 221.12

Thus, the issue here is not whether compensatory royalties should have been assessed, but as to the reasonableness of the royalties which were actually assessed.

■■ Before discussing the substantive issues raised by the parties, the Court must consider the Defendant's contention that this suit can not be maintained because the lessor, Ella Many Ribs is not a party to it. It is true that one whose rights will be affected by a judgment or decree is usually an indispensable party in the action. But there is a well recognized exception to that rule, within which this case falls, that where the trustee is capable of fully representing the interests of the beneficiary, the beneficiary is not an indispensable party to the action. Kerrison v. Stewart, 93 U.S. 155, 23 L.Ed. 843; Green v. Brophy, 71 App.D.C. 299, 110 F.2d 539, 9 A.L.R. 2d 1. Here manifestly, the Secretary of the Interior is in a position to take every action necessary to fully protect the legal rights of the lessor.

■ In a case of this nature the Court is sitting not as a trier of facts de novo, but in a much more limited capacity. Here the power of the Court is limited to a review to determine whether the action of the Secretary was based on fraud, bad faith or lacked any reasonable basis in fact. Continental Oil Co. v. United States, 9 Cir., 184 F.2d 802, affirming United States v. General Petroleum Co., D.C.S.D.Cal., 73 F.Supp. 225. Plaintiff's contention is that the action of the Secretary was arbitrary and capricious and without any reasonable basis.

The action of the Secretary is grounded on two alternative propositions. The first is that the provisions of the lease and the Regulations enable the Secretary to require the drilling of offset wells. Therefore, the argument runs, since the secretary has an absolute power to require offset wells, he has the power to levy a 100% assessment in lieu of offset

wells, in the nature of liquidated damages. Secondly, the Secretary predicates the assumption that if no offset well is drilled, ultimately all the recoverable oil under a property will be drained away, and that a reasonable measure of daily loss is what the land could be expected to produce if a well were drilled thereon. Thus, the Secretary contends, an average of the daily production of adjacent wells is a reasonable estimate of what a well on the non-producing land could be expected to produce and, therefore, of the daily loss through drainage.

■ But the Court finds neither of these positions tenable. From a reading of the lease and Regulations quoted above the Court concludes that what is contemplated is an attempt actually to estimate the drainage. The lease contains the phrase "to compensate the lessor * * * for the estimated loss of royalty through drainage," and the Regulations contain such phrases as "The supervisor shall estimate drainage and compute the losses to the lessor resulting therefrom." 30 C.F.R. 221.12. In the light of these provisions the Court is of the opinion that the Secretary is not authorized to assess liquidated damages. While it may be true that he could absolutely require the drilling of offset wells, still, according to the terms of the lease and regulations, if he permits compensatory royalties in lieu thereof, these must be arrived at on the basis of estimates of actual drainage.

■ Nor is the second of the alternative propositions set out above any more tenable. The estimate of the Secretary that the well drilled by Plaintiff will drain all the oil underlying the Ella Many Ribs lease and the consequent assessment against Plaintiff of an amount equal to 100% of the value of the production from Plaintiff's well is, in the Court's judgement, arbitrary, since it is based on an assumption which lacks justification in fact, failing as it does to take into account any possibility that there may be no oil underlying the Ella Many Ribs lease or that the Plaintiff's well may go dry, or indeed any other pertinent factual contingency. Further, the 100% assessment is patently unreasonable in that it disregards the obvious fact that part, at least, of the oil produced from the drilled well must reasonably be determined to come from below the surface of the land included in the lease on which the well is located. Such being the case, for the Secretary to require Plaintiff to pay compensatory royalties based on the total production of the producing well would be to require it to pay to the adjacent landowner royalties on some oil which must in fact have originally come from beneath the surface of the producing property. In the Court's opinion this disregard of the obvious on the part of the Defendant in arriving at his estimation of drainage causes such estimation to be arbitrary. Nor does the fact that the Secretary later modified his estimate by basing it on one half of the total production of the Star well and the New Year Many Ribs well cure these defects. In the first place it is still an attempt to substitute an arbitrary formula for an estimate of actual drainage. Secondly, even though modified this estimate is still based ultimately on the asserted right of the Secretary to make the 100% assessment.

The Secretary further contends that the 100% assessment is the result of a 1937 intra-departmental letter which has been consistently applied since then, and that in any event some sort of mechanical formula is necessary in view of the practical scientific difficulties of actually estimating drainage. Both of these arguments must fail.

The intra-departmental letter was not referred to in the lease or Regulations and there is no evidence that Plaintiff ever had knowledge of its existence or contents before entering into the lease. Similarly, as to the second point, Plaintiff entered the lease on the basis of what a fair reading of it and the applicable Regulations would disclose. As the Court has already stated, a fair reading of those documents indicates an attempt would be made to estimate actual drain-

age. The Court does not question the right of the Interior Department to promulgate regulations and to draw leases in such a way that lessees are put on notice that if they do not drill offset wells they will be liable to the assessment of 100% compensatory royalties. But that is not the situation here. Practical difficulties there may well be in actually estimating drainage, but the Court can only enforce the meaning and effect of the Secretary's own regulations and the lease which the Department approved. In the light of this analysis the Court holds that the Secretary's determination was without reasonable basis in fact.

In lieu of the Secretary's determination Plaintiff urges the Court to adopt its contention that only 3⁄16 or 18.75% of the oil recovered by the Star well was drained from the Ella Many Ribs tract. This is based on the 160 acre Spacing Order of the North Dakota Industrial Commission for the location of wells in this field.

█ It is true that only 3⁄16 of a 160 acre area surrounding the Star well would be located on the Ella Many Ribs land. Therefore, it is urged, the Spacing Order is evidence that the area of drainage of the Star well would be such that only 3⁄16 of the oil recovered would have come from the Ella Many Ribs land. The Court rejects this argument. In the first place the Spacing Order is concerned with the efficient exploitation and development of the field, a purpose which encompasses other factors beside the estimated area of drainage. In any event the Court is not persuaded that it has the power to substitute its estimate for that of the Secretary. The Regulation, 30' C.F.R. 221.12 provides that "The Supervisor shall estimate drainage." Such an estimation is not a judicial function and even if there were facts in the record from which the Court felt it could come to a determination, it would not be prepared to do so. This is a determination which must originate in the Department of the Interior, subject to judicial review.

In the foregoing circumstances the Court is confronted with the question of the power of the Court and the propriety of the exercise of the power, if it exists, of remanding this matter to the Department of the Interior to make a redetermination of the compensatory royalties owed in light of the principles announced in this opinion. The Court feels it possesses the power to do this. The Interior Department, while performing the action at issue here is an "agency" within the meaning of that term in the Administrative Procedure Act, (Act of June 11, 1946, 60 Stat. 237, as amended, 5 U.S. C.A. § 1001 ff.); Adams v. Witmer, 9 Cir., 271 F.2d 29, and in the absence of specific legislation is controlled by its provisions where applicable. In similar instances, where the actions of an administrative agency have been controlled by the provisions of the Administrative Procedure Act, the United States Supreme Court, and the United States Court of Appeals for the District of Columbia Circuit have indicated that under Section 10 of the Act, (5 U.S.C.A. § 1009), a District Court, upon finding that an agency determination is erroneous, and being unable on the record before it to make an alternative determination, is empowered to remand the cause for further agency action. United States v. Jones, 336 U.S. 641, 671–673, 69 S.Ct. 787, 93 L.Ed. 938; Pacific Far East Lines, Inc. v. Federal Maritime Bd., 107 U.S.App.D.C. 155, 275 F.2d 184. Taking into account all the facts and circumstances, hereinbefore set forth, the Court concludes that the exercise of the power of remand is justifiable and proper.

It is therefore the Order of this Court that the determination by the Secretary of the Interior be set aside and the matter remanded to the Interior Department for further consideration consistent with the principles of this opinion.