**BOURNE v. MILLER, Alien Property Custodian, et al.**

(Circuit Court of Appeals, Second Circuit. December 15, 1924.)

No. 137.

**1. Corporations ⬤➞119—Purchaser acquires no permanent equitable title under option to purchase stock until exercise thereof.**

Until time came to exercise option to purchase stock and the option was exercised, no permanent equitable title could rest in purchaser, even though stock was not of the sort which could be purchased in open market.

**2. War ⬤➞12 — Bill to recover from Alien Property Custodian held to show permanent equitable interest in stock.**

Bill to recover proceeds of stock of corporation seized by Alien Property Custodian, pleading agreement between complainant and seller of stock giving complainant "the entire beneficial interest" in the stock and providing that, whenever the voting rights on such stock should no longer be required by seller to maintain its control of the corporation, complainant should have right to exercise option to purchase the stock, *held* sufficient to show complainant's equitable title or lien.

Appeal from the District Court of the United States for the Southern District of New York.

Bill in equity by George L. Bourne against Thomas W. Miller, as Alien Property Custodian, and others. Decree for plaintiff, and defendants Miller and White appeal. Affirmed.

The opinion of District Judge Augustus N. Hand in the court below was as follows:

The complainant seeks to recover approximately $86,000, representing proceeds of stock of the Locomotive Superheater Company, a New Jersey corporation, which was seized by the Alien Property Custodian. The stock at the time of the seizure stood on the books of the company in the name of the defendant Schmidt'sche Heissdampf Gesselschaft, a German company domiciled in Germany.

The defendants move to dismiss the bill, which sets forth a letter of August 5, 1910, from the defendant Schmidt'sche Heissdampf Gesselschaft, providing that the complainant should have an option to purchase $20,000 stock of the Locomotive Superheater Company at par at any time within five years with the restriction that this stock should not be transferred to him before December 31, 1915. It also provided that the complainant should be entitled to the benefit of the dividend from the date on which he paid the purchase price. The complaint further alleges that on September 11, 1910,

Dr. Schmidt, the president of the defendant Schmidt'sche Heissdampf Gesselschaft, wrote the complainant that it was necessary to modify the agreement of August 5 because otherwise the defendant might lose its stock control of the Locomotive Company, and said:

"Seeing however that in the interest of my German company my adhering to this majority is absolutely necessary I am forced to modify the privilege I granted you in that way, that during five years you are entitled to the benefit of the dividend for the $20,000 shares in question of the Locomotive Superheater Company, that however these shares remain the property of my German company."

After a conference with Hoffman, who represented the German company, it is alleged that a substituted agreement shown to the complainant by Hoffman was executed, but it was agreed that said substituted agreement "should continue in effect only so long as the German company should no longer need said shares to maintain its control." It is further alleged that the complainant consented to execute the substituted agreement upon the promise by Hoffman " * * * that the entire beneficial interest in the 200 shares covered by said proposed substituted agreement would be owned by the plaintiff, and that whenever the voting rights on the said 200 shares should no longer be required by the German company to maintain its control of the Locomotive Superheater Company, the plaintiff could then and there exercise an option on said 200 shares, in such manner that upon the payment by him of $20,000 in cash the said 200 shares would completely pass to the plaintiff. * * * * "

It is contended that by the substituted written contract the complainant could have no right to anything but an amount equivalent to dividends such as he would receive if he were the owner of 200 shares of stock of the Locomotive Superheater Company; in other words, not the dividends themselves, but a compensation in money measured by such dividends as might be declared. The written agreement not only gave him no dividends as such, but provided that he should have no right to control the stockholder. It also provided that the written agreement should "supersede the agreement outlined in the letters of August 5, August 6, and September 11, 1910." But under the oral agreement which is pleaded in article XV of the bill of complaint, there is an attempt to show an equitable interest in the stock. The

complaint alleges that "the entire beneficial interest in the 200 shares covered by said substituted agreement would be owned by the plaintiff." There also appears the allegation in the bill that "the German company, immediately after the execution of said substituted agreement, set aside 200 shares of the stock of the Locomotive Superheater Company, along with certain other shares the beneficial interest in which was owned by persons other than the plaintiff, and after the doubling of the capital stock of said company * * * set aside 400 shares in similar manner, and the German company so held said 400 shares of the plaintiff in its name, but for the benefit of the plaintiff, in conformity with its said verbal agreement with the plaintiff, * * * until said shares were seized by the Alien Property Custodian. * * *"

[1, 2] Until the time came to exercise the option and the option was exercised, no permanent equitable title could rest in the complainant, even though the stock was not of the sort which could be purchased in the open market. Richardson v. Hardwick, 106 U. S. 252, 1 S. Ct. 213, 27 L. Ed. 145. The allegation of the bill that "Hoffman agreed with the plaintiff, in the name of the German company, that the entire beneficial interest in the 200 shares covered by said proposed substituted agreement would be owned by the plaintiff," consequently, either indicates an equitable title subject to be divested if the right to exercise the option should finally cease or, and I think, more probably, an equitable lien upon the stock to secure such rights to exercise the option as the complainant obtained by the verbal agreement. Whichever legal relation is sought to be pleaded, I think enough is alleged to withstand a demurrer. Stock deposited to secure the right to buy under such a verbal agreement as complainant has pleaded creates a different situation from that of a mere option to purchase. The first creates a right in rem though a determinable one, while the second is nothing more than an ordinary contract claim which cannot be specifically enforced.

The motion to dismiss is denied, and the defendant is given 10 days to answer.

William Hayward, U. S. Atty., of New York City, Dean Hill Stanley and Adna R. Johnson, Jr., Sp. Asst. Attys. Gen., for appellants.

Bouvier, Caffey & Beale, of New York City (Francis G. Caffey, of New York City, and J. Harry Covington and Oscar W. Underwood, Jr., both of Washington, D. C., of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

PER CURIAM. Order and decree affirmed, on the opinion in the court below.

---

**ST. LOUIS UNION TRUST CO. et al. v. SAN BENITO LAND & WATER CO. (FRAZIER et ux., Interveners).**[*]

(District Court, S. D. Texas. January 19, 1924.)

No. 40.

**1. Judgment** ☞678(6)—**Judgment against receiver in action to set aside prior judgment in action in tort held, under facts, to involve as necessary consequence adjudication that receiver, and not company, was liable.**

Judgment against receiver in action in state court to set aside prior judgment in action in tort held, on ground that it had been wrongfully rendered against former receiver, held, under the particular facts, to involve as necessary consequence adjudication that receiver, and not company, was liable for damages.

**2. Judgment** ☞828(3)—**Adverse judgment in receiver's action in state court to set aside judgment held such as federal court having charge of receivership would enforce, without relitigating question of receiver's liability.**

Where, at time of purchase of property from receiver, there was pending suit by receiver in state court to cancel judgment obtained against former receiver in action in tort, on ground that it had been wrongfully entered against him, and purchaser was required to give bond to satisfy such judgment if it was not set aside, held, under the facts, that adverse judgment in such receiver's suit amounted to an adjudication that liability was that of receiver, and not of company, and was in itself sufficient evidence of receiver's obligation to authorize its enforcement by federal court having charge of receivership, and court would not go behind it to inquire whether it should have been against company, instead of receiver.

In Equity. Suit by the St. Louis Union Trust Company and others against the San Benito Land & Water Company, wherein Brice Frazier and wife intervened. Decree for interveners.

Sam Streetman (of Andrews, Streetman, Logue & Mobley), of Houston, Tex., and Samuel Spears, of San Benito, Tex., for appellants.

Graham, Jones, Williams & Ransome, and Seabury, George & Taylor, all of Browns-

[*]Decree affirmed 4 F.(2d) 1010.