**DON McMILLIAN, INC.,**
v.
**The UNITED STATES of America.**
Civ. A. No. 2337.

United States District Court
N. D. Texas,
Amarillo Division.
Oct. 4, 1958.

Marvin K. Collie, Clyde L. Wilson, Jr., Vinson, Elkins, Weems & Searls, Houston, Tex., for plaintiff.

Chas. K. Rice, Asst. Atty. Gen., W. B. West, III, U. S. Atty., Fort Worth, Tex., for defendant.

DOOLEY, District Judge.

This suit is for the recovery of excess profits tax and interest alleged to have been erroneously and illegally assessed against and collected from the plaintiff Don McMillian, Inc., under the laws of the United States, for the fiscal years ended October 31, 1951 and October 31, 1952. The plaintiff contends for the favored tax ceiling treatment of a "new" corporation under the terms of § 501 of the Revenue Act of 1951, particularly that part now shown as § 430(e)(1)(A) and (B) in the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. Excess Profits Taxes, § 430(e)(1)(A, B). The government defends on the theory that the fiscal years in question do not fall within the first five taxable years of the plaintiff, and, consequently, that the plaintiff is not entitled to the benefit of the said tax ceilings. The plaintiff Don McMillian, Inc., was incorporated on September 18, 1950. Another corporation, Earl McMillian, Inc., was incorporated on October 4, 1946. The said Earl McMillian became the owner of 249 shares and his adult son, Don McMillian, became the owner of 500 shares, making a total of practically 75% of all the capital stock of the plaintiff corporation at the time it was incorporated, and at all material times thereafter they retained such stock ownership. The same two persons, at all material times, also owned in the aggregate about 93% of all the capital stock of Earl McMillian, Inc. The determination of this suit depends upon whether Earl McMillian and his adult son, Don McMillian, were in control (by virtue of more than a 50% stock ownership) of both said corporations at all pertinent times within the meaning of § 430(e)(2)(B)(ii) in the Internal Revenue Code of 1939, as amended. This, in turn, hinges on whether the law raised a *constructive* stock ownership to the contrary which will neutralize Earl McMillian's actual stock ownership in the plaintiff company. The relevant statutory provisions, from the Internal Revenue Code of 1939, as amended, with the most pertinent parts shown in italics, are set forth in the margin.[1]

1. "§ 430. *Imposition of tax*
    "(a) *General rule.* In addition to other taxes imposed by this chapter, there shall be levied, collected, and paid for each taxable year *ending after June 30, 1950, and beginning before January 1, 1954,* upon the adjusted excess profits net income, as defined in section 431, of every corporation (except a corporation exempt under section 454) an excess profits tax equal to whichever of the following amounts is the lesser: * * *
    "or (3) in the case of a corporation for which an amount is determined for the taxable year under subsection (e), the amount determined under such subsection. * * *
    "(e) *New corporations.*
    "*(1) Alternative amount. In the case of a taxpayer which commenced business after July 1, 1945, and whose fifth taxable year ends after June 30, 1950, the amount referred to in subsection (a) (3) shall be—* * * *

"*(2) First five taxable years.* For the purpose of this subsection—
    "(A) The taxable year in which the taxpayer commenced business and the first, second, third, and fourth succeeding taxable years shall be considered its first, second, third, fourth, and fifth taxable years, respectively.
    "*(B) The taxpayer shall be considered to have been in existence and to have had taxable years for any period during which it or any corporation described in any clause of this subparagraph was in existence, and the taxpayer shall be considered to have commenced business on the earliest date on which it or any such corporation commenced business:* * * *
    "*(ii) Any corporation if a group of not more than four persons who control the taxpayer at any time during the taxable year also controlled such corporation at any time during the period beginning twelve months preceding their acquisition of control of the taxpayer and ending with*

The key to the crucial question in this litigation lies in a written agreement, dated September 23, 1950, between Earl McMillian and Frank L. Helvey, Jr., which, in part, evidenced an option given Helvey to purchase McMillian's entire stockholding in the plaintiff corporation on October 1, 1953, at a price equal to the fair market value thereof at said time, if Helvey exercised the option. In fact, the option was never exercised. It was a good faith and valid option, however. The significance of this option ties in with whatever bearing it has on whether the McMillians had control of both corporations, so that the taxable year in which the plaintiff corporation commenced business would be set back to the year that the other corporation was organized in 1946. § 430(e)(2)(B)(ii). The last sentence of subparagraph (ii) reads: "For the purpose of this clause, the ownership of stock shall be determined in accordance with the provisions of section 503, except that constructive ownership under section 503(a)(2) shall be determined only with respect to the individual's spouse and minor children." The said § 503 in the Internal Revenue Code of 1939 deals with *constructive* ownership of corporate stock, in testing the existence of a personal *holding company*,

*the close of the taxable year; but only if at any time during such period (and while such persons controlled such corporation) such corporation was engaged in a trade or business substantially similar to the trade or business of the taxpayer during the taxable year. For the purpose of this clause, the term 'control' means the ownership of more than 50 per centum of the total combined voting power of all classes of stock entitled to vote, or more than 50 per centum of the total value of shares of all classes of stock. A person shall not be considered a member of the group referred to in this clause unless during the period referred to in this clause he owns stock in such corporation at a time when the members of the group control such corporation and he owns stock in the taxpayer at a time when the members of the group control the taxpayer. For the purpose of this clause, the ownership of stock shall be determined in accordance with the provisions of section 503, except that constructive ownership under section 503(a)(2) shall be determined only with respect to the individual's spouse and minor children."* 26 U.S.C.A. § 430(a) (3) (e) (1) (2) (A) (B) (ii), as amended.

"§ 501. *Definition of personal holding company*

"(a) *General rule.* For the purposes of this subchapter and chapter 1, the term 'personal holding company' means any corporation if— * * *

"(2) *Stock ownership requirement. At any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals."* 26 U.S.C.A. § 501(a) (2).

"§ 503. *Stock ownership*

"*(a) Constructive ownership. For the* purpose of determining whether a corporation is a personal holding company, insofar as such determination is based on stock ownership under section 501(a) (2), section 502(e), or section 502(f)— * * *

"(2) *Family and partnership ownership.* An individual shall be considered as owning the stock owned, directly or indirectly, by or for his family or by or for his partner. For the purposes of this paragraph the family of an individual includes only his brothers and sisters (whether by whole or half blood), spouse, ancestors, and lineal descendants.

"(3) *Options.* If any person has an option to acquire stock such stock shall be considered as owned by such person. For the purposes of this paragraph an option to acquire such an option, and each one of a series of such options, shall be considered as an option to acquire such stock.

"(4) *Application of family-partnership and option rules.* Paragraphs (2) and (3) shall be applied—

"(A) For the purposes of the stock ownership requirement provided in section 501(a) (2), if, but only if, the effect is to make the corporation a personal holding company;

"(B) For the purposes of section 502(e) (relating to personal service contracts), or of section 502(f) (relating to the use of property by shareholders), if, but only if, the effect is to make the amounts therein referred to includible under such subsection as personal holding company income. * * *

"(6) *Option rule in lieu of family and partnership rule.* If stock may be considered as owned by an individual under either paragraph (2) or (3) it shall be considered as owned by him under paragraph (3)." 26 U.S.C.A. § 503(a) (2, 3), (4) (A), (B), (6).

and paragraph (3) thereof, under the heading of "Options", says: "If any person has an option to acquire stock such stock shall be considered as owned by such person." The next paragraph (4), under the heading "Application of family-partnership and option rules" reads as follows:

"Paragraphs (2) and (3) shall be applied—

"(A) For the purposes of the stock ownership requirement provided in section 501(a)(2), if, but only if, the effect is to make the corporation a personal holding company."

The crux of the controversy between the parties is found in the plaintiff corporation's claim that for the purpose of determining whether Earl McMillian and Don McMillian had stock ownership control of the plaintiff corporation, the above option provision strips Earl McMillian of any stock ownership in the plaintiff corporation, so that the "control" should be attributed to Frank L. Helvey, Jr., and Don McMillian. Helvey never owned any capital stock of Earl McMillian, Inc., although he did own 250 shares of stock in the plaintiff corporation, and thus it follows that Helvey and the younger McMillian could not at any time have held joint and concurrent control of the two corporations. The government, in rejoinder, argues that to construe and apply the option provision of the law in the manner urged by the plaintiff would confound and defeat the very scheme and intent of this excess profits tax statute, and that the true intendment would restrict the operation of the option provision to instances where its effect would be to make out a state of joint control over the taxpayer and another corporation engaged in substantially the same type of business and thereby preclude recourse to any of the favorable tax ceilings under § 430(e), or else, at least, would relegate the taxpayer corporation to one of the less favorable among the four of said tax ceilings. In this present instance, if the government is right, it would defeat any standing by the plaintiff company as a beneficiary under the statutory provisions last mentioned.

In coming to final grips with the question, the pattern of the material statutory provisions must be kept clearly in mind. The purpose of those tax ceilings in section 430(e) is: "To give assurance to new corporations in their initial period of development that the excess profits tax will not work undue hardship upon them," and thereby to encourage "the creation and development of new techniques, new processes and new corporations." Merten's Law of Federal Income Taxation, Vol. 7A, § 42.30, page 102. Naturally, this tax indulgence in favor of "new" corporations would be fraught with great risks of abuse, unless careful safeguards be provided to confine the benefits thereof to the true scope of the purpose prompting the law. One obvious avenue of possible encroachment would be for the principal stockholders of an old corporation to organize ostensibly a new corporation to carry on the same or similar kind of business as the other corporation. There is no dispute that both the plaintiff corporation and the other corporation under question in this suit carried on the same type of business within the sense of the law. No effort is being made by the government to show that Helvey was one of certain stockholders holding joint control of these two corporations and there would be no possibility to support any such claim, either with or without the option which has been mentioned, since he never owned any stock in Earl McMillian, Inc.

Of course, if imputing arbitrarily the ownership of the stock covered by the said option would serve to show a joint control of the two corporations, then such legal fiction would be activated under the mandate of the law as one measure of security against the inroads of corporations, which might seek to intrude under the "new" corporation umbrella by means of various devices, schemes, splits of stock, options, and so forth. The plaintiff, I believe, virtually

concedes as much, but says that to limit the option provision to that one aspect would, without justification, make it a one-way street. I do not believe that is a sound viewpoint. The option provision, in its inception, was designed to deal with the problem of identifying personal holding corporations and it had a taxwise motive, but, by its express terms, would only function to fasten the tax liability that would go with being a personal holding corporation and would not function to rescue the company from that classification. The Congress has now made that statute do double duty by linking it to the excess profits tax law so far as same relates to so-called new corporations, and the incidence or impact of the statute seems quite comparable in both fields.

A proper perspective needs to be maintained. The nature of the option provision is simply being a part of a statutory pattern defining *constructive* ownership of corporate stock. So far as known, the plaintiff corporation does not contend that Helvey was ever the owner in fact, either legally or equitably, of the shares of stock which were the subject of the option in question, and, certainly, he never had any kind of title or ownership in said stock. Bourne v. Miller, 2 Cir., 4 F.2d 1006. The certificates evidencing such stock remained in the custody and name of Earl McMillian and, presumably, he at all times voted the stock, or, at least, had the right to vote it at corporate meetings, and doubtless he collected any dividends declared and payable on such stock. If, in this suit, Earl McMillian is to be deemed the owner of such stock at all material times, as he was in literal fact, then he and his adult son had joint control of those two corporations and, under the law, the plaintiff corporation would not be entitled to the tax grace claimed in this suit, and it does seem a topsy-turvy argument to say that because of a statute dealing with constructive ownership, the Courts must shut their eyes to the true and actual ownership manifested by the record and blandly open the door of this tax moderation to the plaintiff corporation by virtue of statutory provisions specially designed to screen out corporations fitting the description of the plaintiff. When the nature of those statutes is kept in mind, and it is seen that the purpose is to close, not open, the door, it should follow that the function and operation of the option provision ought to be kept within the legislative design. No case at all closely in point on the facts has been cited or found and, presumably, this is a case of first impression, which is not really remarkable since the excess profits tax laws have always been of labyrinthian structure and there are infinite points which might generate litigation, so, it would take a long time, in this slow moving field, to cover it with beaten paths.

In spite of the dearth of direct authorities, I think there are some which, in an overall way, mark an attitude and policy relevant to this lawsuit, such as Helvering v. New York Trust Co., 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361; Woolford Realty Co. v. Rose, 286 U.S. 319, 52 S.Ct. 568, 76 L.Ed. 1128; Reinecke v. Smith, 289 U.S. 172, 53 S.Ct. 570, 77 L.Ed. 1109; Haggar Co. v. Helvering, 308 U.S. 389, 60 S.Ct. 337, 84 L.Ed. 340; United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345, and Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596.

Judgment will be rendered for the defendant.