**CHEYENNE RIVER SIOUX TRIBE OF INDIANS, Eagle Butte, South Dakota, Plaintiff,**

v.

**UNITED STATES of America, and Peter Hiatt, Eagle Butte, South Dakota, Defendants.**

**Civ. No. 378.**

United States District Court
D. South Dakota,
Central Division.

Jan. 16, 1963.

Blaine Simons, Sioux Falls, S. D., and William Howard Payne, Gen. Counsel, Cheyenne River Sioux Tribe of Indians, Washington, D. C., for plaintiff.

Harold C. Doyle, U. S. Atty., and R. K. Krogstad, Asst. U. S. Atty., Sioux Falls, S. D., for defendant United States.

Warren May, of Martens, Goldsmith, May & Porter, Pierre, S. D., and Ramon A. Roubideaux, Fort Pierre, S. D., for defendant, Peter Hiatt.

BECK, District Judge.

This proceeding involves a motion by the defendants under Rule 12(b) F.R. C.P. to dismiss the plaintiff's action, on the ground that its petition to vacate and enjoin enforcement of the judgment in another action, fails to state a claim upon which relief can be granted and that the plaintiff is not a party in interest.

The controversy and the judgment sought to be vacated has its origin and history in a condemnation proceeding entitled: United States of America v. 640.14 Acres of Land, more or less, Situated in Stanley and Dewey Counties, State of South Dakota, and Peter Hiatt, et al. and unknown owners, Civil No. 274 C.D., District of South Dakota, commenced under the provisions of the Act of September 3, 1954, Public Law 776, 83rd Congress, 68 Stat. 1191.[1]

---

1. "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That this agreement between the United States of America and the Sioux Indians of Cheyenne River Reservation in South Dakota, Witnesseth, That this agreement when enacted by Congress and when confirmed and accepted in writing by three-quarters of the adult Indians of the Cheyenne River Reservation in South Dakota, as shown by the tribal rolls of the said reservation, does hereby convey to the United States all tribal, allotted, assigned, and inherited lands or interests within said Cheyenne River Reservation belonging to the Indians of said reservation, which lands are required by

That case, at the instance of the parties to it, was tried to a Board of Land Commissioners, with an award of $23,090 to Hiatt, the Indian allottee landowner defendant, as just compensation. The judgment in the case on May 8, 1961, approves that sum and provides for payment thereof to the extent of $10,620.83—the excess over the appraisal value—and interest, out of the $3,134,014 tribal settlement reserve fund created by that Act.

It is the plaintiff's position under its petition and the arguments on the motion, insofar as they are material, that it had a vested interest in that fund; that it by reason thereof had an indispensable party status in the condemnation suit; that it should have been joined as a party thereto, but since it wasn't, that the relief sought in the petition should be granted.

■ Dispositive ruling of those claims, obviously can not be made on this motion, unless, as said in United States v. Farmers Mutual Ins. Ass'n of Kiron, Iowa, 8 Cir., 288 F.2d 560 (1961), "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim". Thomason v. Hospital T. V. Rentals, Inc., 8 Cir., 272 F.2d 263 (1959), Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, and

the United States for the reservoir to be created by the construction of the dam across the Missouri River in South Dakota, now known as Oahe Dam, including such lands along the margin of said proposed reservoir as may be required by the Chief of Engineers, United States Army, for the construction, protection, development, and use of said reservoir all as described in part II of this agreement, subject, however, to the conditions of this agreement hereinafter set forth: *Provided*, That the effective date of this Act, shall be the date when the Secretary of the Interior shall by proclamation declare that this agreement has been ratified and approved in writing by three-quarters of the adult members of said Indians as above defined.

"Section II. The United States agrees to pay, out of funds appropriated for construction of the Oahe project, as just compensation for all lands and improvements and interests therein (except the agency hospital) conveyed pursuant to section I of this Act; and for the bed of the Missouri River so far as it is the eastern boundary of said Cheyenne River Reservation, the sum of $5,384,014; which sum shall be in final and complete settlement of all claims, rights, and demands of said Tribe or allottees or heirs thereof arising out of the construction of the Oahe project, and shall be deposited to the credit of said Tribe in the Treasury of the United States, to draw interest on the principal thereof at the rate of 4 per centum per annum until expended: Provided, That the said Tribal Council with the approval of the Secretary of the Interior shall distribute the sum of $2,250,000 in accordance with the revised appraisal of the Missouri River Basin investigation staff of the Department of the Interior."

The lands conveyed to the United States Government are referred to and described in Part II of that Act.

"Section XV. The right of any individual member of said Indian Tribe to reject the final appraisal made on his land and improvements shall be preserved and, if any individual does reject such final appraisal, he shall file notice of such rejection by notice in writing to the Chief of Engineers, United States Army, who shall thereupon file a proceeding in the United States District Court of the District of South Dakota as in a condemnation proceeding and jurisdiction is hereby conferred upon said Court to determine, by procedure corresponding to a condemnation proceeding, the value of said land and improvements and the said Tribal Council shall deposit with the clerk of said court the full amount set out in the final appraisal which was previously offered to said individual, which fund shall be used in payment in full or in part of the final judgment of said United States District Court. Cost of such proceedings shall be borne by the United States and the individual involved shall be entitled to counsel at his own expense. In the event the amount of the appraisal so deposited in said Court is not enough to cover the final judgment in said proceeding, the United States shall pay such difference from the fund of $5,384,014 established under section II, hereof, into the hands of the clerk of said Court and thereupon title shall vest in the United States."

Lada v. Wilkie, 8 Cir., 250 F.2d 211 (1957).

█ The record on this motion is not in accord with that standard. Missing is evidence or admissions to warrant necessary findings and conclusions on all controverted determinative questions, explicitly or impliedly raised and required for a final adjudication, such as (1) the plaintiff's alleged actual participation in the condemnation suit and its legal effect; (2) extent of plaintiff's ownership in the land conveyed by the Act and its interest in the reserve fund, equitable or legal; (3) what number of claims by other allottees remain to be settled and the effect of each on the alleged interest of the plaintiff in the reserve fund; (4) conclusiveness of the Government's defense under the record as it was made in the former suit, factually and as a matter of law and (5) effect of the plaintiff's admissions on this motion that though the petition *"technically is in the nature of an independent action"*, it *"is in fact a further proceeding"* in the other and as such, may it not be regarded as an application for a new trial which comes too late. (Emphasis supplied).

The court, being without information on those points and others suggested in the petition, can not ascribe "certainty" to the defendants' claim that the plaintiff is entitled to no relief. Neither can it hold that the rule in Heckman v. United States, 224 U.S. 413, 444, 32 S.Ct. 424, 434, 56 L.Ed. 820 [2], should be applied, nor can it conclude as a matter of law that the controversy has in fact been adjudicated and that the motion for that reason should be granted, this, on the theory that another condemnation suit probably would lead to results not materially different from those in the first.

The motion to dismiss will be denied with leave for the Government to answer the plaintiff's petition within twenty days from the date of the service of this decision. It is so ordered.

2. "It is further urged that there is a defect of parties, on account of the absence of the Indian grantors. It is said that they are the owners of the lands and hence sustain such a relation to the controversy that final decree cannot be made without affecting their interest. Shields v. Barrow, 17 How. [129] 130, 139 [15 L.Ed. 158]; Williams v. Bankhead, 19 Wall. 563 [22 L.Ed. 184].

"The argument necessarily proceeds upon the assumption that the representation of these Indians by the United States is of an incomplete or inadequate character; that although the United States, by virtue of the guardianship it has retained, is prosecuting this suit for the purpose of enforcing the restrictions Congress has imposed, and of thus securing possession to the Indians, their presence as parties to the suit is essential to their protection. This position is wholly untenable. There can be no more complete representation than that on the part of the United States in acting on behalf of these dependents—whom Congress, with respect to the restricted lands, has not yet released from tutelage. Its efficacy does not depend upon the Indian's acquiescence. It does not rest upon convention, nor it it circumscribed by rules which govern private relations. It is a representation which traces its source to the plenary control of Congress in legislating for the protection of the Indians under its care, and it recognizes no limitations that are inconsistent with the discharge of the national duty."

See also United States v. Adamic, D.C. N.Y.W.D., 54 F.Supp. 221 (1943), Mc-Gugin v. United States, 10 Cir., 109 F.2d 94 (1940), Spriggs v. Seaton, 10 Cir., 271 F.2d 583 (1959), United States v. State of Washington, 9 Cir., 233 F.2d 811 (1956), Barta v. Oglala Sioux Tribe of Pine Ridge Reservation, 8 Cir., 259 F.2d 553 (1958) cert. den. 358 U.S. 932, 79 S. Ct. 320, 3 L.Ed.2d 304 and 39 C.J.S. Guardian and Ward § 175 p. 314 et seq.