**CHEYENNE RIVER SIOUX TRIBE OF INDIANS, Eagle Butte, South Dakota, Plaintiff,**

v.

**UNITED STATES of America, and Peter Hiatt, Eagle Butte, South Dakota, Defendants.**

Civ. No. 378 C. D.

United States District Court
D. South Dakota,
Central Division.

Oct. 26, 1963.

William Howard Payne, Washington, D. C., Gen. Counsel for Cheyenne River Sioux Tribe, and Blaine Simons, of Simons, Beasom & Gibbs, Sioux Falls, S. D., for plaintiff.

Harold Doyle, U. S. Atty., and Robert K. Krogstad, Asst. U. S. Atty., Sioux Falls, S. D., for the United States.

Warren May, of Martens, Goldsmith, May & Porter, Pierre, S. D., and Ramon Roubideaux, Fort Pierre, S. D., for defendant Peter Hiatt.

BECK, District Judge.

This is a petition by the plaintiff, hereinafter referred to as the Tribe, to vacate, set aside and permanently enjoin enforcement of a judgment entered on May 8, 1961, in the case of the United States of America, Plaintiff, vs 640.10 acres of land, more or less, situate in Stanley and Dewey Counties, State of South Dakota, and Peter Hiatt, et al., and

Unknown Owners, Defendants, Civil No. 274 C.D., District of South Dakota.

The petitioner proceeds on the theory that the Tribe had a vested interest in the fund out of which that judgment is to be satisfied, hence, an indispensable party and since it hadn't been made a party that its said interest wasn't and could not have been affected under the provisions of the Fifth Amendment that: "No person shall be deprived of his property without due process".

As against that claim it is the government's position and that of Hiatt's, no one else being interested and on that point there is no dispute, that the United States and not the Tribe, under the Act of September 3, 1954, Public Law 776, 83rd Congress, 68 Stat. 1191 [1], and the rule invoked in Shields v. Barrow, 17 How. 130, 58 U.S. 130, 137, 15 L.Ed. 158, Williams v. Bankhead, 19 Wall. 563, 86 U.S. 563, 22 L.Ed. 184, Heckman v. United States, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820, Barta v. Oglala Sioux Tribe of Pine Ridge Reservation, 8 Cir., 259 F.2d 553 (1958), cert. den. 358 U.S. 932, 79 S.Ct. 320, 3 L.Ed.2d 304, and others, was the real party in interest; that the Tribe actually participated in all of the proceedings in the former action and that all of its interest in the fund was then finally adjudicated and in any event that all of the matters before the court in this case were before it on the Tribe's motion to intervene in the other and in the course thereof, no appeal having been made, brought to a final close as that motion was denied on August 2, 1961.

The case arises out of and under the terms of Sections I, II and XV of the Act, which relates to the government's taking of, paying for and procedure in getting some 104,000 acres within the Tribe's reservation for construction on the Missouri River of the Oahe Dam.

There is little if any dispute as to the material facts, it being admitted or established that the effective date of the Act was August 9, 1955 [2]; that the consideration for that agreement and the entire taking referred to in said Section I, was $5,384,014 which was deposited to the credit of the Tribe in the Treasury of the United States until expended; that the Tribe under the same Section, prior to the commencement of this action, with the approval of the Secretary of the Interior and in line with the revised appraisal of the Missouri River Basin investigating staff of the Department of the Interior, had disbursed $2,250,000; that Hiatt's participation in that sum was $12,469.17; that his recovery in the former action exceeded that sum by $10,620.83, besides interest; that the Tribe's interest in what remained on deposit to that extent would be reduced should the judgment be satisfied; and that all other claims against the deposit which originally could have been asserted by affected landowners, had theretofore been settled.

It is also admitted or established that the government with actual notice to, knowledge and consent of the Tribe and at its instance, commenced the former action [3] pursuant to the terms of Section XV of the Act and that the Tribe

1. Hereinafter referred to as the Act, unless otherwise indicated. Sections I, II and XV of that Act are referred to in the footnotes to the case of Cheyenne River Sioux Tribe of Indians, Plaintiff v. United States of America and Peter Hiatt, Defendants, D.C., 32 F.R.D. 14 page 17 and for that reason not repeated here.

2. Established by a proclamation reported in Federal Register, Vol. 20, No. 70, page 2340 which reads as follows: "Pursuant to the authority vested in me, I, Douglas McKay, Secretary of the Interior, do hereby proclaim that

the agreement between the United States of America and the Indians of the Cheyenne River Sioux Reservation contained in the Act of September 3, 1954 (68 Stat. 1191), has been ratified in writing by three-quarters of the adult members of the Indians of the Cheyenne River Reservation in South Dakota, as shown by the tribal rolls of said reservation, and that the date of this proclamation is the effective date of the act."

3. Ex. 5, telegram Oct. 14, 1957, from Frank Ducheneaux, Chairman Cheyenne River Sioux Tribal Council to Clinton

thereafter joined the government in causing it to be tried and defended before a Board of Commissioners named and appointed under F.R.Civ.P. 71A(h) and in the subsequent proceedings which led to the judgment.

There is formal record basis to show the motion to intervene to have been in the following form:

"Now comes Cheyenne River Sioux Tribe who respectfully moves for leave to intervene in this action in order to assert the objections to findings of fact, conclusions of law and report of Commissioners set forth in its proposed pleadings, of which a

copy is hereto attached, on the ground that while any judgment in this action will ostensibly [sic] be against the United States of America, the real party in interest who will be bound by and adversely affected by said judgment is the Cheyenne River Sioux Tribe, in that any judgment will be paid out of funds appropriated by the Congress of the United States to the Sioux Indians of the Cheyenne River Sioux Reservation, South Dakota.",

the basis used in support thereof [4] and the finality in the disposition as the court, upon a recital in its order of the facts [5]

G. Richards, United States Attorney, District of South Dakota:

"Regarding Peter Hiatt Land evaluation case scheduled for hearing Wednesday Oct 16 1957 in accordance with your letter of Oct 11 Cheyenne River Sioux Tribe would prefer the case be tried before a commission appointed by the court Tribe feels a commission hearing would take less time and could evaluate the fact better as they would be in a possession [sic] to make a physical inspection of the land if required and hold hearing locally if necessary".

See also government's Exs. 1, 2, 3, 4 and 6 relating to rejection of appraisal price, deposit in registry, conferences between the United States Attorney and the Tribe as to whether or not the case should be tried to a Board of Commissioners of a jury and notice that the Tribe in that case would be represented by the United States Attorney.

4. This is in the form of the Tribe's Objections to Findings of Fact and Conclusions of Law and report of Commissioners in the former action filed June 28, 1961, with allegations to the effect: (1) that the award by the Board of Commissioners was excessive; (2) that it was arrived at upon an erroneous and improper basis; (3) that the improvements on the property were valued separately and apart from the land; (4) that the inclusion in the award of $4,-180 for the timber was erroneous inasmuch as the members of the Tribe under Public Law 776 had the right without charge to cut and remove the timber; (5) that the award appears as having been based "on nothing more then unsupported testimony of nonexpert witnesses and as such is arbitrary and capricious"; and (6) that the award is

out of line with values established for similar and adjacent land.

5. Order denying motion dated August 2, 1961:

"The above entitled matter having come on pursuant to 'Motion to Intervene', made by the Cheyenne River Sioux Tribe requesting leave to intervene in the above entitled matter, and having been heard on oral argument before this court in the courtroom of the Court, in the United States Federal Building in the City of Aberdeen, South Dakota, at 11:00 o'clock A. M. on July 18, 1961, pursuant to 'Notice of Hearing', and thereafter further stipulation by all counsel, and the plaintiff appearing by Robert L. Jones, Assistant United States Attorney, and the defendant appearing by his counsel Warren W. May and Ramon A. Roubideaux, and the Cheyenne River Sioux Tribe appearing by their counsel, William Howard Payne of Washington, D. C., and Blaine Simons of Sioux Falls, South Dakota, and the Court having heard argument of respective counsel, and being fully advised in the premises, and having considered the matter fully, and thereafter having announced in open court that the Court was of the opinion that the matters raised by petitioner were substantially of the same nature and kind as were presented to this Court in this matter on February 3, 1961, and it further having been recited in open court that the Cheyenne River Sioux Tribe in 1957 had advised the office of the United States Attorney for the District of South Dakota by telegram that such tribe preferred to have the matter in controversy tried by a United States Commission rather than by jury, and it further appearing that at the time of the trial of the above entitled matter that the former Chairman of such

"disallowed and denied" it "in its entirety". There is like basis to show the motion to intervene to have been made within the time limit for appeal from the judgment, F.R.Civ.P. 73(a).

Whether the order denying that motion was a "final decision" under 28 U.S.C.A. § 1291, hence appealable, and if so of such scope as to have been a final adjudication of the issues now being determined, are questions which were affirmatively settled in Hirshhorn v. Mine Safety Appliances Co., et al, 3 Cir., 190 F.2d 675 (1951), on another appeal in the same case, reported in 193 F.2d 489 (1952), where such orders were held appealable and in Cohen v. Beneficial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528, where the order in that case was held to have been a "final decision" under that Section, but restricted as to application in United States v. Munsingwear, 8 Cir., 178 F.2d 204 (1949) and in the reference in that case to Johnson Company v. Wharton, 152 U.S. 252, 14 S.Ct. 608, 38 L.Ed. 429, by the observation in Johnson that:

"The inquiry as to the conclusiveness of a judgment in a prior suit between the same parties can only be whether the court rendering such judgment—whatever the nature of the question decided, or the value of the matter in dispute—had jurisdiction of the parties and the subject-matter, and whether the question sought to be raised in the subsequent suit was covered by the pleadings, and actually determined, in the form-

tribe was present and gave testimony, and that the then acting Tribal Chairman was present during the trial and that four members of such tribe gave testimony in addition to four other witnesses called by the Assistant United States Attorney, and it further appearing that such trial was prosecuted diligently and fully in all respects by all parties and that a fair trial was had in all respects, and that in the opinion of the Court the trial of the matter a second time either before the same tribunal or a different tribunal would not substantially alter the verdict, and that in fact the office of the United States Attorney for the District

er suit. The existence or nonexistence of a right, in either party, to have the judgment in the prior suit reexamined, upon appeal or writ of error, cannot, in any case, control this inquiry. * * * Looking at the reasons upon which the rule rests, its operation cannot be restricted to those cases which, after final judgment or decree, may be taken by appeal or writ of error to a court of appellate jurisdiction.",

and by a further reference in the same case to the comment in Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 that:

"It is first necessary to understand something of the recognized meaning and scope of res judicata, a doctrine judicial in origin. The general rule of res judicata applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' Cromwell v. County of Sac, 94 U.S. 351, 352. [24 L.Ed. 195.] The judg-

of South Dakota was representing not only the United States of America as plaintiff but was also representing the interest of the Cheyenne River Sioux Tribe, and that whereas judgment in the above matter has been entered, and the facts now presented are not of a nature to entitle the petitioner to intervene, and whereas such petitioner has failed to adduce facts to support the burden of proof entitling it to intervene, now therefore, it is hereby

"ORDERED that the 'Motion to Intervene' of the Cheyenne River Sioux Tribe be disallowed and denied in its entirety."

ment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment. See Von Moschzisker, 'Res Judicata,' 38 Yale L.J. 299; Restatement of the Law of Judgments, §§ 47, 48."

See also United States v. Cathcard, D.C. Neb., 70 F.Supp. 653, 660 (1946) where the comment is made:

"The established rule is that where the second suit is upon the same cause of action and between the same parties, or their privies, as the first, a final judgment on the merits in the former action is conclusive in the latter as to each question and issue which was or which might have been presented and determined in the first suit. Pierce v. National Bank of Commerce in St. Louis, 8 Cir., 268 F. 487, certiorari denied 273 U.S. 730, 47 S.Ct. 240, 71 L.Ed. 863; Commercial Electrical Supply Company v. Curtis, et al., 8 Cir., 288 F. 657, certiorari denied 263 U.S. 709, 44 S.Ct. 36, 68 L.Ed. 518; Guettel v. United States, 8 Cir., 95 F.2d 229 [118 A.L.R. 1060], certiorari denied 305 U.S. 603, 59 S.Ct. 64, 83 L.Ed. 383; Cromwell v. Sac County, 94 U.S. 351, 24 L.Ed. 195."

In this connection and as the court under this record and the rules in those cases, turns to the question of identical issues in the two proceedings, for purpose of testing the merits of the interposed defense of res judicata, there is no need for generalizations. The answers are in the specific contentions relating to "vested interest" and "indispensable party status" urged to support the former and now to nullify the judgment which, if the motion had been granted, would have been vacated. Parties, objectives, subject matter and weapons in the two having been the same, it is not now for the Tribe to say, "it has not had its day in court" and that its constitutional rights have been violated.

Finality, between the parties in Civil No. 274, thus, having been ascribed to the order on the motion to intervene and the judgment then attacked and this action being no more than a renewal of the struggle to resolve issues, it is held that the rule of res judicata has been properly invoked and that the Tribe's petition should be and the same is hereby denied.

This decision will be treated as the court's findings of fact and conclusions of law. Judgment will be prepared by counsel for the defendants and forwarded to the court for approval and entry.