CHEYENNE RIVER SIOUX TRIBE OF INDIANS, Eagle Butte, South Dakota, Appellant,

v.

UNITED STATES of America and Peter Hiatt, Eagle Butte, South Dakota, Appellees.

No. 17650.

United States Court of Appeals Eighth Circuit.

Dec. 9, 1964.

Roubideaux, Poches & Reade, Fort. Pierre, S. D.

Before MATTHES, BLACKMUN and RIDGE, Circuit Judges.

MATTHES, Circuit Judge.

This is an appeal from the judgment of the District Court denying the petition of Cheyenne River Sioux Tribe of Indians to vacate and enjoin enforcement of a judgment previously entered in a condemnation proceeding.[1]

Appellant's unsuccessful attempts to first enter the condemnation action as a party and then to vacate the judgment rendered therein were premised on the theory that it was an indispensable party to such action.

A chronological statement of events which occurred before and after the initiation of the condemnation action will be of assistance in comprehending the question posed by this appeal.

An Act of Congress, approved September 30, 1950, Public Law 870, 64 Stat. 1093 (1950), authorized the negotiation and ratification of settlement contracts with the Tribe for Indian lands and rights acquired by the United States for the Oahe Dam and Reservoir, Missouri River Development. Pursuant to this congressional authorization, negotiations ensued and were culminated in the agreement between the Government and the Tribe which is the subject of the Act of Congress approved September 3, 1954, Public Law 776, 68 Stat. 1191 et seq. (1954). The provisions of this agreement, pertinent here, are found in Sections I, II and XV of the Act.[2]

By Section I of the Act, the Tribe conveyed to the Government all tribal, allotted, assigned and inherited land within the Reservation belonging to the Indians for a reservoir which was to be created by construction of the Oahe Dam across the Missouri River in South Dakota.

William Howard Payne, Washington, D. C., made argument for appellant and filed brief with Blaine Simons, of Simons, Beasom & Gibbs, Sioux Falls, S. D., and Arthur P. Scibelli, Washington, D. C.

Edmund B. Clark, Atty., Dept. of Justice, Washington, D. C., made argument for United States and filed brief with Ramsey Clark, Asst. Atty. Gen., Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., and Harold C. Doyle, U. S. Atty., Sioux Falls, S. D.

Warren W. May, of Martens, Goldsmith, May & Porter, Pierre, S. D., made argument for appellee Peter Hiatt and filed brief with Ramon A. Roubideaux of

---

1. We shall hereinafter refer to Cheyenne River Sioux Tribe of Indians as appellant or Tribe.

2. These sections appear verbatim in footnote 1 of the District Court's memorandum denying the Government's motion to dismiss the action. See 32 F.R.D. 14 (D.So.Dak.1963).

908

This section provided that the Act would be effective on the date when the "Secretary of the Interior shall by proclamation declare that this agreement has been ratified and approved in writing by three-quarters of the adult members of said Indians as above defined". Section II obligated the Government to pay out of appropriated funds, as compensation for the property acquired by it, the sum of $5,384,014.00 which was deposited to the credit of the Tribe in the Treasury of the United States to draw interest at the rate of 4% per annum until expended. The Tribal Council with the approval of the Secretary of the Interior was required to distribute the sum of $2,250,-000.00 to individual Indian owners in accordance with the appraisals of the individual properties. Section XV preserved to individual members of the Tribe the right to reject the final appraisal and in the event of a rejection, the government was authorized to file a proceeding in the United States District Court for the District of South Dakota, "as in a condemnation proceeding". The Court was empowered to determine by procedure "corresponding to a condemnation proceeding" the value of the land, and the Tribal Council was required to deposit with the Clerk of the Court the full amount set out in the appraisal to be used in payment in full or in part of the final judgment of the Court. Finally, the agreement provided that if the final judgment exceeded the amount of the appraisal the Government was required to pay such excess from the fund of $5,-384,014.00 established under Section II, into the hands of the Clerk.

Peter Hiatt, a member of the Tribe and the owner of approximately 640 acres of land within the reservoir area, rejected the appraisal of $12,469.17 for his property and on June 6, 1957, the Government instituted a condemnation proceeding "for the ascertainment of just compensation to be paid for property in accordance with Section XV, Public Law 776, 83rd Congress". Pursuant to Rule 71A (h) Fed.R.Civ.P., the Court appointed commissioners to determine the value of the Hiatt land. The commissioners conducted a hearing in which the Tribe as such did not participate although the then Chairman of the Tribe and four members thereof testified. On January 19, 1961, the commissioners filed their report consisting of findings of fact and conclusions of law showing that they determined the value of Hiatt's land to be $23,090.00. Objections to the report on the ground, among others, that the award was excessive were filed by the Government, were considered and denied and the report was approved with finality on March 30, 1961. On May 9, 1961, judgment was entered in favor of Hiatt for the deficiency of $10,620.83 and 6% interest thereon from the date of taking.

Shortly thereafter, appellant made its first assault on the condemnation proceedings. On June 28, 1961, it filed a motion for leave to intervene in order to assert objections to the report of the commissioners on the ground that it was the real party in interest and would be bound and adversely affected by the judgment in that any judgment will "be paid out of funds appropriated by the Congress of the United States to the Sioux Indians of the Cheyenne River Sioux Reservation. * * *" The objections which appellant proposed to file raised matters substantially the same as were presented in the Government's objections. On August 7, 1961, after a hearing the court denied appellant's motion to intervene.[3] On February 2, 1962, petition to vacate

3. In the order denying the motion, the court found *inter alia:* "and it further appearing that such trial was prosecuted diligently and fully in all respects by all parties and that a fair trial was had in all respects, and that in the opinion of the Court the trial of the matter a second time either before he same tribunal or a different tribunal would not substantially alter the verdict, and that in fact the office of the United States Attorney for the District of South Dakota was representing not only the United States of America as plaintiff but was also representing the interests of the Cheyenne River Sioux Tribe, and that whereas judgment in the above matter has been entered, and the facts now pre-

the judgment in the condemnation action was filed; therein, appellant again alleged the same matters which were incorporated in its motion to intervene and also alleged that the judgment was "null, void and of no force and effect for the reason" it was an indispensable party to the condemnation action. Appellant prayed the court to declare the judgment null and void and to restrain the Government from paying and Hiatt from collecting the judgment.

Ultimately, and after denial of the Government's motion to dismiss, 32 F.R.D. 14 (D.So.Dak.1963), the court on October 26, 1963, filed its memorandum opinion, 222 F.Supp. 911, denying the petition to vacate on the ground that the matters relied upon therein had formed the basis for appellant's motion to intervene, and no appeal having been taken from the order denying intervention, appellant was barred by *res judicata.* Judgment was thereafter entered and this appeal followed.

The key question presented by this appeal is whether appellant was an indispensable party to the condemnation action. Appellant contends and argues that inasmuch as the amount of Hiatt's judgment, $10,620.83 and interest, is to be paid from funds in which appellant has a vested right, it and not the Government was the real party in interest. Appellees assert that the Government was the only proper party plaintiff in the condemnation action; that appellant was not an indispensable or proper party thereto and that appellant is bound by the judgment rendered therein.

Appellant and appellee Hiatt dwell at some length upon the guardian-ward relationship existing between the United States and the Tribe. Although appellant recognizes its status of a ward of the Government for certain purposes, it reasons that the negotiations leading to Public Law 776, supra, which conveyed

the land to the Government, together with the terms of the agreement incorporated in that law demonstrates that the Government's role of guardian was abandoned and that it was not contemplated that the Government alone should represent and protect the Tribe's interests in litigation over the value of an individual's land.

The authorities support the view that generally the Government is the indispensable party in an action which involves alienation or condemnation of Indian property. See and compare Heckman v. United States, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820 (1912), an action to cancel conveyances executed by members of the Cherokee Tribe; LaMotte, et al. v. United States, 254 U.S. 570, 41 S.Ct. 204, 65 L.Ed. 410 (1921), action by the United States to enjoin defendants from asserting any rights under leases obtained from individual Osage Indians without approval of the Secretary of the Interior; United States v. Moore, 284 F. 86 (8 Cir. 1922), action by the United States to recover the amount of royalties collected by defendant under an assignment by a Quapaw Indian; Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939), condemnation proceeding involving allotted parcels of land forming part of Grand Portage Indian Reservation; United States v. Cattaraugus County, 67 F.Supp. 294 (W.D.N.Y.1946), action by the United States for declaratory and injunctive relief on behalf of the Seneca Nation of Indians with respect to certain condemnation proceedings against reservation land; Nicodemus v. Washington Water Power Co., 264 F.2d 614 (9 Cir. 1959), proceeding by privately owned public utility company to condemn easement over land allotted in severalty to an Indian and held in trust for the Indian by the United States; Barta v. Oglala Sioux Tribe of Pine Ridge Reservation,

sented are not of a nature to entitle the petitioner to intervene and whereas such petitioner has failed to adduce facts to support the burden of proof entitling it to intervene, now therefore, it is hereby

ORDERED that the 'Motion to Intervene' of the Cheyenne River Sioux Tribe be disallowed and denied in its entirety."

259 F.2d 553, 555 (8 Cir. 1958), cert. denied, 358 U.S. 932, 79 S.Ct. 320, 3 L.Ed.2d 304 (1959), actions brought by the United States on behalf of the Oglala Sioux Tribe to collect taxes from nonmembers of tribe.

■ Generally one whose rights will be affected by a judgment is an indispensable party to litigation. Rules 17 and 19, Fed.R.Civ.P. But there are exceptions. In Pan American Pet. Corp. v. Udall, 192 F.Supp. 626 (D.C.Dist. 1961) plaintiff sued to recover compensatory oil royalties paid under protest. Defendant contended that the suit could not be maintained because the lessor, Ella Many Ribs, a restricted Indian was not a party. In disposing of this question the court stated, at page 628 of 192 F.Supp.:

> "It is true that one whose rights will be affected by a judgment or decree is usually an indispensable party in the action. But there is a well recognized exception to that rule, within which this case falls, that where the trustee is capable of fully representing the interests of the beneficiary, the beneficiary is not an indispensable party to the action. Kerrison v. Stewart, 93 U.S. 155, 23 L.Ed. 843; Green v. Brophy, 71 App.D.C. 299, 110 F.2d 539, 9 A.L.R. 2d 1. Here manifestly, the Secretary of the Interior is in a position to take every action necessary to fully protect the legal rights of the lessor."

See also Wesson v. Crain, 165 F.2d 6 (8 Cir., 1948) where the late Judge Sanborn reviewed at some length the rule relating to indispensable parties.

■ On this record we are constrained to hold that the Tribe was not an indispensable party. We again revert to Public Law 776, supra, where we find the parties (Government and Tribe) agreed in unequivocal language upon the procedure to be followed in the event an individual member of the Tribe rejected the final appraisal. The Government, not the Tribe, was obligated to file proceedings and the Court was authorized to determine the value of the land taken. Section XV, 68 Stat. 1194 (1954). Thus, the Tribe recognized and agreed that the Government was capable of representing its interest derived from the fund out of which any excess or deficiency judgment is to be satisfied.

Neither do we find any provision in Rule 71A, Fed.R.Civ.P. requiring the Government to name the Tribe as a party defendant or requiring the Court to permit the Tribe, upon application, to intervene as a party. This Rule, which appellant concedes was properly invoked when the action was instituted against Hiatt, provides that the Government shall join as defendants only the persons having or claiming an interest in the land. There is no duty, express or implied, on the Government to join as a party defendant one who is under a contractual obligation to satisfy the judgment. In other words, an interest in the fund that may be affected may not be equated with an interest in the land that has been taken in determining who is entitled to participate in the litigation. Analogous in principle is Jayson v. United States, 294 F.2d 809 (5 Cir. 1961), where this dispositive announcement appears:

> "We think the court below properly declined to bring in as parties the individual citizens of Dallas, Texas who had indemnified the Government against having to pay more than a certain figure for the property in question so as to induce the location of the federal building at the site chosen. The only question involved in this action is the value of the property condemned by the United States, and the only proper parties are the Government and the owners of the property taken or of interests therein."

In summary, we are satisfied that the Government was the proper party to institute and prosecute the condemnation proceeding and that appellant was not an indispensable party to such action.

There is no claim of fraud, collusion or bad faith on the part of the Government, and indeed from the record brought here it appears that the Government diligently endeavored to protect the rights and interests of the Tribe.

■ As we have seen, the trial court's denial of appellant's petition to vacate the condemnation judgment was premised on the ground that it was barred by *res judicata*. Although the Government strongly advocates that appellant was not a proper party to the condemnation action, it contends with equal emphasis that appellant is precluded, as the trial court held, for failing to appeal the denial of its motion to intervene. This contention has appealing logic. If, as appellant argues, it was an indispensable party to the condemnation proceeding, then it would appear beyond question that it was entitled to intervene. See Rule 24(a) Fed.R.Civ.P. Such intervention would have been by right rather than permissive, and the order denying this right was appealable. Kozak v. Wells, 278 F.2d 104, 108 (8 Cir. 1960) and cases cited there. Appellant failed to avail itself of the right to appeal. Instead, six months after its motion to intervene was denied, it instituted this action, and thereby sought to again raise the identical questions and issues that were presented and determined in the intervention proceedings. This it may not permissibly do. The issue of indispensability was decided against appellant and *res judicata* bars further litigation of that issue between the same parties. See Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 598, 68 S.C. 715, 92 L.Ed. 898 (1948).

■ Appellant also contends there is no legal basis to support the inclusion in the judgment of interest on the amount of the deficiency from the date of taking. In view of the conclusion we have reached on the basic issue, we pretermit consideration of this question. Appellant lacks standing to attack this aspect of the judgment.

Affirmed.