FRANK B. JAMES & others *vs.* WAMPANOAG TRIBAL COUNCIL
OF GAY HEAD, INC.
(and a companion case[1]).

Suffolk.   September 8, 1986. — November 12, 1986.

Present: GREANEY, C.J., BROWN, & FINE, JJ.

*Res Judicata. Practice, Civil,* Parties, Summary judgment.

Plaintiffs who brought two actions in State courts against a corporation
   representing the Wampanoag Indians in Federal litigation concerning
   claims to certain land were barred by the doctrine of issue preclusion
   from litigating in the State actions not only issues with respect to the
   Federal claims actually asserted, but also issues with respect to the
   pendent State claims that could have been raised in the Federal cases to
   contest the authority of the defendant to represent the Wampanoag Indians
   and to effect a settlement. [124-129]

CIVIL ACTIONS commenced in the Suffolk Division of the
Probate and Family Court Department on November 3, 1983,
and in the Superior Court Department on November 16, 1983,
respectively.

The cases were consolidated for trial in the Superior Court
Department and were considered by *Thomas R. Morse, Jr.,*
J., on motions for summary judgment.

*William A. Hahn* (*Robert C. Hahn* with him) for the plaintiffs.

*Henry J. Sockbeson* of the District of Columbia for the
defendant.

GREANEY, C.J., The plaintiffs in these two consolidated
actions claim to be Wampanoag Indians. They have brought
an action in the Probate Court and another in the Superior
Court in Suffolk County, alleging several violations of State

[1] The companion action is between the same parties.

law, against the Wampanoag Tribal Council of Gay Head, Inc. (Council). The Council is representing the Gay Head Indian tribe in other litigation before the United States District Court for the District of Massachusetts. That litigation asserts an interest, on behalf of the tribe, to land on the Gay Head peninsula on the island of Martha's Vineyard. In these actions, the plaintiffs are attempting to use State law to rid themselves of the Council's representation and to block the impending settlement of the Federal land claims. Specifically, the plaintiffs allege in their two actions that the defendant has violated its corporate charter by asserting that it represents the tribe, and has misappropriated the plaintiffs' rights to privacy by acting as their spokesman in the land litigation. Further, the plaintiffs assert in their complaints that a vote conducted by the defendant to ascertain whether a proposed settlement of the land claims should be approved was tainted by fraud and deceit. The plaintiffs and the defendant filed cross motions for summary judgment pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974). A judge of the Superior Court granted the defendant's motion.

The long and tortuous history of the land dispute, and the inception of these actions, is set forth in two opinions of the United States Court of Appeals for the First Circuit, *James* v. *Watt,* 716 F.2d 71 (1st Cir. 1983), cert. denied sub nom. *James* v. *Clark,* 467 U.S. 1209 (1984), and *James* v. *Bellotti,* 733 F.2d 989 (1st Cir. 1984). There is no need to repeat the background which is adequately detailed in these two opinions.[2]

---

[2] We expand the history of the litigation only to clarify one point and state another. First, the reference in *James* v. *Bellotti,* 733 F.2d at 992, to the dismissal of the so-called *Bellotti I* action is incorrect. *Bellotti I* is Probate Court, Suffolk County, No. C-2390 (1986), which is one of the two consolidated cases before us. The reference to a dismissal may not be to *Bellotti I* but may be to another action brought by the plaintiffs against the Attorney General and other defendants, namely, Probate Court, Suffolk County, No. 84E-0047 (1984).

Second, the Federal legislation necessary to consummate the settlement apparently is still before Congress. See H.R. 2868, 99th Cong., 1st Sess. (1985), "A BILL To settle Indian land claims in the town of Gay Head, Massachusetts." In connection with that legislation, the Assistant Secretary for Indian Affairs in the Department of the Interior has apparently reached a preliminary conclusion that the Gay Head Indians may not meet

1. In so far as relevant to this appeal, the defendant's motion for summary judgment was predicated on two grounds: (1) the preclusion of the plaintiffs' State claims by their failure to raise them in the longstanding Federal litigation; and (2) the lack of genuine triable issues of fact. The judge allowed the summary judgment for the defendant on the ground of issue preclusion.

The judge was correct. The original action brought by the defendant, *Wampanoag Tribal Council of Gay Head, Inc.* v. *Gay Head,* No. 74-5826 (D. Mass.) (*Gay Head I*), is twelve years old and was eight years old when the plaintiffs sought to intervene in it as a party. The Federal courts have acquired exclusive in rem and in personam jurisdiction over the final disposition of all the land claims. See *James* v. *Bellotti,* 733 F.2d at 993. Under the applicable statute, 25 U.S.C. § 177 (1982), a conclusive decision of the land claims necessarily requires determinations of (1) whether a tribe of Gay Head Indians exists, and (2) whether the defendant has authority to speak for that tribe. See *James* v. *Watt,* 716 F.2d at 72.

The second determination is the one involved in these cases. When they sought to intervene in the original action, the plaintiffs were aware of the fact that the defendant claimed that it, not the plaintiffs, was the exclusive spokesman for the tribe. The plaintiffs' motion to intervene in the original Federal action alleged that they were indispensable parties and that a failure to join them could lead to loss of their rights, on issue preclusion principles, to act independently of the tribe or the defendant. Moreover, the pleadings in the original action (particularly a motion to dismiss filed and argued by the town of Gay Head on the ground that the tribe was not a party to the suit) squarely

---

the criteria for certification as an Indian tribe. See 51 Fed. Reg. 23,604 (1986). The legislation has been approved by the House of Representatives with the apparent contingency that the Gay Head Wampanoags must be recognized by the Department as an Indian tribe. We do not view these considerations, or the other events in Congress brought to our attention by counsel for the plaintiffs, all of which occurred after the allowance of the defendant's rule 56 (b) motion in these cases, as affecting the outcome of the appeal.

put in issue the defendant's authority to act as the tribe's exclusive representative. That issue was adjudicated, favorably to the defendant here, by the denial of the town's motion to dismiss.

Cognizant of these facts, the plaintiffs withdrew their appeal from the order denying intervention in the original action.[3] Simultaneously they framed and litigated to a final adverse judgment a second Federal action without joining the defendant in that action, although it was clearly within their means to do so. See *James* v. *Watt, supra*. Thereafter, in the first State action commenced in the Probate Court (and then removed to the United States District Court for Massachusetts) they withdrew their appeal from the order dissolving the restraining order that was based on a challenge to the authority of the defendant to enter the settlement. See the history of *James* v. *Bellotti,* No. 83-3494 (D. Mass.) described at 733 F.2d 992. At the same time, the plaintiffs pressed the present State law claims in both the Probate and the Superior Courts.

We think the conclusion inescapable that the plaintiffs have engaged in a carefully calculated litigating strategy designed

---

[3] When this appeal was withdrawn, it had been calendared for oral argument in the United States Court of Appeals for the First Circuit. That court noted, in its opinion in *James* v. *Watt,* 716 F.2d at 77, a separate land claim brought by the plaintiffs which parallels *Gay Head I,* that the question of the defendant's authority to act for the tribe would be decided on the plaintiffs' appeal from the denial of intervention.

Specifically, the court said the following:

"For another thing . . . other Indians [viz., the Indians represented by the defendant in these cases] have brought a suit on behalf of the Gay Head tribe to obtain land on the peninsula, and they are presently in the process of settling their suit. The plaintiffs here disagreed with the plaintiffs in the other suit, but they evidently did not, or could not, name the tribe as a party plaintiff in this case because the other plaintiffs control the tribe. These facts suggest to us that the pleadings in this case were drawn as part of a litigating strategy and plaintiffs showed the district court no reason why they should not be bound by the consequences of that strategy. In any event, the issue at stake — whether plaintiffs here have a right to upset the settlement entered into by the tribe and its other members — is more appropriately before us in another case appealed to this court, *Wampanoag Tribal Council of Gay Head, Inc.* v. *Town of Gay Head, No. 83-1163,* scheduled to be heard this September" (bracketed material added).

to circumvent adverse decisions in the Federal courts and to seek new determinations from the State courts of issues that could have been raised, but purposely were not, in the Federal litigation. The plaintiffs sought intervention as of right in the original action. They knew, or should have known, when they withdrew their appeal from the order denying intervention, that their substantive rights would be concluded both on the issue of their standing and the authority of the defendant to represent the tribe. See *Mayflower Dev. Corp.* v. *Dennis,* 11 Mass. App. Ct. 630, 634 (1981), and cases cited. We are satisfied that the plaintiffs should be precluded from now claiming that their interests have not been adequately represented in the original action.[4] See *Cheyenne River Sioux Tribe of Indians* v. *United States,* 338 F.2d 906, 911 (8th Cir. 1964), cert denied, 382 U.S. 815 (1965).

Under the standards set forth in *Anderson* v. *Phoenix Inv. Counsel of Boston, Inc.,* 387 Mass. 444, 450-451 (1982), we also have no doubt that the Federal District Court judge who heard *Gay Head I* would have taken and decided, under the doctrine of pendent jurisdiction, the plaintiffs' present State claims had it been decided on appeal that his order denying the plaintiffs' intervention was erroneous. By the time intervention was sought, the judge had spent a considerable amount of time and effort in the litigation of *Gay Head I.* The judge would not have wanted his efforts to be attacked collaterally in State courts on grounds that could have fairly been decided in the litigation before him. By withdrawing their appeal of the denial of intervention a week after the decision in *James* v. *Watt, supra,* by litigating the latter action to final judgment

---

[4] It is argued that not all the plaintiffs in these cases attempted to intervene in the original action. Consequently, it is urged that these "new" plaintiffs cannot be precluded by litigation to which they were not a party. Although not certified as a class, we think these plaintiffs who did not seek to intervene in the original action were effectively present through the representation of the defendant. Moreover, when two actions raise the same issues, arise out of the same occurence, and, especially, where a victory by any one plaintiff will necessarily benefit equally everyone similarly situated, issue preclusion should not be avoided simply by adding new people to a hundred-name list of plaintiffs. Such an approach would give a vexatious litigant a potent weapon to avoid the finality of judgment despite adequate opportunities to litigate dispositive issues.

without joining the defendant, and by failing to pursue their appeal in *James* v. *Bellotti, supra,* the plaintiffs carefully side-stepped the interests of the Federal court in seeing the dispute decided once and for all. We conclude that they have foreclosed their opportunity, not only with respect to the Federal claims actually asserted, but also with respect to the pendent State claims now before us that could have been raised, to contest the authority of the defendant both to represent the tribe and effect the settlement.[5] See *Harper Plastics, Inc.* v. *Amoco Chemicals Corp.,* 657 F.2d 939, 945-946 (7th Cir. 1981). See also *James* v. *Bellotti,* 733 F.2d at 994.

Finally, it is of no consequence that a final judgment has not yet entered in *Gay Head I.*[6] Whether an issue is final, in the sense of precluding further litigation of the issue, in some circumstances, "turns [as Judge Friendly said] upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. 'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Lummus Co.* v. *Com-*

---

[5] This is so because the plaintiffs' State law theories depend on the syllogism that they are Gay Head Indians, that the defendant does not represent them, and that, as a result, the defendant's asserted representation constitutes a misappropriation of their names and an interference with their privacy. This overlooks the fact that a bona fide tribal government possesses the right to bind individual tribal members against their will, just as a State may enforce a law against a citizen who disagrees with that law. The question of the defendant's authority to represent the tribe has been adjudicated as far as the plaintiffs are concerned. It logically follows from that determination that the defendant cannot have misappropriated the plaintiffs' names or interfered with their privacy.

The plaintiffs also assert that because the defendant has organized as a Massachusetts charitable corporation it has only that power over tribal members that State law gives such a corporation over its members. This view is wrong. If the Gay Head Indians constitute a tribe, and the defendant is its government, (an issue now apparently under decision in Washington) the tribe is a sovereign, and it is not answerable to State law. See *Santa Clara Pueblo* v. *Martinez,* 436 U.S. 49 (1978).

[6] The entry of final judgment in *Gay Head I* is made contingent by the joint memorandum of settlement on the passage of the Federal legislation authorizing and implementing the settlement.

*monwealth Oil Refining Co.,* 297 F.2d 80, 89 (2d Cir. 1961), cert. denied, 368 U.S. 986 (1962). Here the issue crucial to the plaintiffs is the authority of the defendant to represent the tribe, and the plaintiffs had, as described above, several opportunities to resolve that issue but purposely chose not to. Because they did not do so the principle of the *Lummus* case governs the issue of the defendant's authority and the present State law claims which are logically dependent on that issue.[7] The upshot

---

[7] This conclusion applies equally to the claims alleging fraud and deceit in the 1983 tribal vote approving the settlement. By abandoning their appeal from the intervention issue, the plaintiffs lost standing to attack the settlement on State law grounds which would have been accepted for decision on the basis of pendent jurisdiction. Moreover, if a tribe does exist, see note 2, *supra,* it is likely, given the sovereignty of Indian tribes, that any question pertaining to the regularity of the vote approving the settlement may also be an exclusively Federal question. See note 5, *supra.*

If we are wrong in this analysis, we would still uphold the allowance of summary judgment on the fraud and deceit claims on an alternative ground. The defendant's rule 56(b) motion was accompanied by affidavits and materials which, in our opinion, demonstrated that the vote was conducted regularly and properly. That being the case, the plaintiffs, to avoid summary judgment, were required to allege specific facts which established that there existed a genuine triable issue. *Community Natl. Bank v. Dawes,* 369 Mass. 550, 554 (1976). It is not sufficient to rely upon conclusions, assertions in legal memoranda, allegations in pleadings, or the hope that the judge might draw contradictory inferences from materials in the record. See *Farley v. Sprague,* 374 Mass. 419, 425 (1978). Specifically, the plaintiffs were required to proffer specific facts which supported their fraud and deceit claims. See, e.g., *Old Towne Liquor Store, Inc. v. Alcoholic Beverages Control Commn.,* 372 Mass. 152, 155 (1977); *First Natl. Bank v. Slade,* 379 Mass. 243, 245 (1979).

In our view, the plaintiffs failed to meet that burden. The only allegations in their affidavit concerning the vote are contained in paragraphs 30, 31 and 35. We do not consider the mere assertion, without more, that "partisan literature" was included with the ballots as creating an issue of fact. The affidavit furnished on behalf of the defendant provides the material distributed to the voters which, in the absence of anything further, we find to be impartial. Thus, the conclusion that the literature was "partisan" without more does not suffice to create an issue for trial.

Further, the assertion that after the vote "157 ballots [were] unaccounted for" does not establish the possibility of fraud, as the plaintiffs' affidavit establishes its own complete answer to this assertion. According to the plaintiffs, 350 ballots were mailed but only 193 votes were said to have been received and tallied. The allegedly missing ballots are accounted for in paragraph 30 of the plaintiffs' affidavit, which states that the plaintiffs,

of all of this is to leave the matter of the land claims exclusively to the Federal courts where, if there is some determination, administrative or otherwise, that a tribe does not exist, see note 2, *supra,* there may be the need for further proceedings.

2. As the action in the Superior Court (No. 65145) sought declaratory relief, it might have been preferable for the judge to have cast the judgment in a form which declared the basis for dismissing the claim. As that case, and the whole litigation, reveal unusual complexity, we think it the wiser course simply to affirm the judgment as it presently stands. The docket of the Probate Court for Suffolk County case (No. C-2390) reveals that no judgment has been entered in that case. One should be entered.

Accordingly it is ordered (1) that the judgment in Superior Court case No. 65145 be affirmed; and (2) that a judgment enter pursuant to Mass.R.Civ.P. 56(b), in Probate Court case No. C-2390, dismissing the complaint.

*So ordered.*

---

who "numbered well over 120," were told to abstain from voting. Thus, accepting paragraphs 30, 31, and 35 of the plaintiffs' affidavit as true, they have not established a triable issue concerning fraud as to the manner in which the voting was conducted.